

# Johnny Taylor
**601.850.4321 | DROID TURBO 2**

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|----------------|------------------------|-------|
| Jan 31 | 11:48 AM | 601.850.4230 | Lottie, LA | Jackson, MS | 39 | -- | -- | -- |
| Jan 31 | 12:27 PM | 225.572.5357 | Baton Roug, LA | VM Deposit, CL | 1 | -- | -- | -- |
| Jan 31 | 12:36 PM | 225.9216831 | Baton Roug, LA | Batonrouge, LA | 8 | -- | -- | -- |
| Jan 31 | 12:54 PM | 225.572.6367 | Baton Roug, LA | VM Deposit, CL | 1 | -- | -- | -- |
| Jan 31 | 12:35 PM | 318.364.2684 | Baton Roug, LA | Marksville, LA | 9 | -- | -- | -- |
| Jan 31 | 12:47 PM | 402.6012600 | Prairievil, LA | Incoming, CL | 5 | -- | -- | -- |
| Jan 31 | 1:10 PM | 225.9216833 | Gonzales, LA | Batonrouge, LA | 8 | -- | -- | -- |
| Jan 31 | 1:23 PM | 225.632.2021 | Gonzales, LA | VM Deposit, CL | 1 | -- | -- | -- |
| Jan 31 | 1:37 PM | 225.572.6357 | Gonzales, LA | Galvez, LA | 2 | -- | -- | -- |
| Jan 31 | 4:18 PM | 713.542.9759 | Washington, LA | Incoming, CL | 15 | -- | -- | -- |
| Jan 31 | 4:21 PM | 713.542.3759 | Washington, LA | VM Deposit, CL | 2 | -- | -- | -- |
| Jan 31 | 5:02 PM | 601.353.4155 | Alexandria, LA | Jackson, MS | 37 | -- | -- | -- |
| Jan 31 | 5:05 PM | 225.216.7493 | Alexandria, LA | Batonrouge, LA | 2 | -- | -- | -- |
| Jan 31 | 5:16 PM | 985.9903231 | Boyce, LA | VM Deposit, CL | 1 | -- | -- | -- |
| Jan 31 | 5:31 PM | 985.9903231 | Deny, LA | Incoming, CL | 7 | -- | -- | -- |
| Jan 31 | 5:54 PM | 601.519.5006 | Natchitoch, LA | Incoming, CL | 4 | -- | -- | -- |
| Jan 31 | 11:56 PM | 214.412.1022 | Grand Prai, TX | Grandprai, TX | 2 | -- | -- | -- |
| Feb 1 | 9:50 AM | 337.493.8635 | Fort Worth, TX | Lk Charles, LA | 6 | -- | -- | -- |
| Feb 1 | 9:58 AM | 504.982.2421 | Fort Worth, TX | Neworleans, LA | 5 | -- | -- | -- |
| Feb 1 | 10:20 AM | 225.572.6367 | Grand Prai, TX | VM Deposit, CL | 1 | -- | -- | -- |
| Feb 1 | 10:42 AM | 225.614.8963 | Fort Worth, TX | Batonrouge, LA | 4 | -- | -- | -- |
| Feb 1 | 10:56 AM | 225.0210193 | Fort Worth, TX | VM Deposit, CL | 1 | -- | -- | -- |
| Feb 1 | 10:57 AM | 225.9210193 | Fort Worth, TX | Incoming, CL | 6 | -- | -- | -- |
| Feb 1 | 11:46 AM | 225.572.6367 | Fort Worth, TX | VM Deposit, CL | 1 | -- | -- | -- |
| Feb 1 | 2:00 PM | 225.572.6357 | Arlington, TX | Batonrouge, LA | 36 | -- | -- | -- |

 **verizon** Billing period Mar 5, 2018 to Apr 4, 2018 | Account # 221267325-00001 | Invoice # 7666475282

# Johnny Taylor

**601.850.1284 | Samsung Galaxy S8 Plus**

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|----------------------|-------|
| Mar 19 | 5:54 PM | 601.850.4330 | Gonzales, LA | Incoming, CL | 7 | -- | -- | -- |
| Mar 20 | 12:15 PM | 601.850.4330 | Thibodaux, LA | Jackson, MS | 22 | | -- | -- |
| Mar 21 | 5:16 PM | 601.850.4330 | Sorrento, LA | Incoming, CL | 27 | -- | -- | -- |
| Mar 21 | 5:51 PM | 601.850.4330 | Gonzales, LA | Incoming, CL | 12 | | -- | -- |
| Mar 22 | 12:27 PM | 601.850.4330 | Thibodaux, LA | Jackson, MS | 11 | -- | -- | -- |
| Mar 22 | 7:10 PM | 985.493.4727 | Thibodaux, LA | Incoming, CL | 2 | | -- | -- |
| Mar 23 | 7:43 AM | 601.850.4330 | Gonzales, LA | Jackson, MS | 1 | -- | -- | -- |
| Mar 23 | 8:05 AM | 985.860.5418 | Gonzales, LA | Incoming, CL | 41 | -- | -- | -- |
| Mar 23 | 6:38 PM | 601.850.4330 | Gonzales, LA | Incoming, CL | 3 | -- | -- | -- |
| Mar 24 | 5:03 PM | 601.850.4330 | Gonzales, LA | Jackson, MS | 50 | | -- | -- |
| Mar 26 | 6:33 PM | 601.850.4330 | Thibodaux, LA | Jackson, MS | 17 | -- | -- | -- |
| Mar 26 | 7:23 PM | 985.493.4727 | Thibodaux, LA | Incoming, CL | 1 | | -- | -- |
| Mar 27 | 12:11 PM | 225.927.5663 | Gonzales, LA | Batonrouge, LA | 7 | -- | -- | -- |
| Mar 28 | 4:23 PM | 601.850.4330 | Thibodaux, LA | Jackson, MS | 44 | -- | -- | -- |
| Mar 28 | 5:19 PM | 601.850.4330 | Gonzales, LA | Jackson, MS | 2 | | -- | -- |
| Mar 30 | 11:06 PM | 985.493.4727 | Thibodaux, LA | Incoming, CL | 1 | -- | -- | -- |
| Mar 31 | 2:34 AM | 985.493.4727 | Thibodaux, LA | Incoming, CL | 1 | -- | -- | -- |
| Mar 31 | 4:13 AM | 985.493.4727 | Thibodaux, LA | Incoming, CL | 1 | -- | -- | -- |
| Apr 2 | 9:01 PM | 985.493.4727 | Thibodaux, LA | Incoming, CL | 1 | -- | -- | -- |
| Apr 4 | 3:34 PM | 601.850.4330 | Thibodaux, LA | Jackson, MS | 2 | -- | -- | -- |
| Apr 4 | 3:37 PM | 601.850.4330 | Thibodaux, LA | VM Deposit, CL | 1 | -- | -- | -- |
| Apr 4 | 3:37 PM | 601.850.4330 | Thibodaux, LA | Jackson, MS | 72 | -- | -- | -- |

# Johnny Taylor

**601.850.4321 | DROID TURBO 2**

## Talk activity

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|----------------------|-------|
| Mar 5 | 5:20 AM | 800.347.2683 | Gonzales, LA | Toll-Free, CL | 1 | | -- | -- |
| Mar 5 | 7:00 AM | 214.412.1022 | Gonzales, LA | Grandprari, TX | 1 | -- | -- | -- |
| Mar 5 | 7:05 AM | 402.544.8482 | Gonzales, LA | Omaha, NE | 1 | -- | -- | -- |
| Mar 5 | 9:29 AM | 402.544.8482 | Gonzales, LA | Omaha, NE | 1 | -- | -- | -- |
| Mar 5 | 9:47 AM | 225.622.9605 | Gonzales, LA | Galvez, LA | 2 | -- | -- | -- |
| Mar 5 | 9:58 AM | 402.544.8482 | Gonzales, LA | Omaha, NE | 1 | -- | -- | -- |
| Mar 5 | 11:16 AM | 402.544.8482 | Gonzales, LA | Omaha, NE | 1 | -- | -- | -- |
| Mar 5 | 5:36 PM | 318.359.2684 | Gonzales, LA | VM Deposit, CL | 1 | -- | -- | -- |
| Mar 6 | 12:11 PM | 225.978.6062 | Gonzales, LA | Batonrouge, LA | 4 | -- | -- | -- |
| Mar 6 | 12:56 PM | 402.544.8482 | Gonzales, LA | Incoming, CL | 18 | -- | -- | -- |
| Mar 6 | 1:21 PM | 225.572.6367 | Gonzales, LA | Batonrouge, LA | 2 | -- | -- | -- |
| Mar 6 | 1:23 PM | 402.544.8482 | Gonzales, LA | Omaha, NE | 1 | -- | -- | -- |
| Mar 6 | 1:59 PM | 225.572.6367 | Gonzales, LA | VM Deposit, CL | 1 | -- | -- | -- |

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ADAM C. SCOTT** | * | |
| | * | |
| **Plaintiff,** | * | **CIVIL ACTION NO.** |
| | * | **SECTION " "** |
| **VERSUS** | * | |
| | * | **JUDGE:** |
| **UNION PACIFIC RAILROAD COMPANY** | * | **MAGISTRATE:** |
| | * | |
| **Defendant.** | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COMPLAINT FOR DAMAGES

NOW COMES, through undersigned counsel, Plaintiff Adam C. Scott, a person of the full age of majority and a resident of the Parish of Jefferson, State of Louisiana, and for his Complaint for Damages, respectfully represents:

### I.

Made Defendant herein is: Union Pacific Railroad Company (hereinafter referred to as "Union Pacific"), a corporation duly organized and existing under the laws of the State of Delaware and authorized to do and doing business in the Eastern District of Louisiana, State of Louisiana.

### II.

This is an action arising under the provisions of the Federal Employers' Liability Act, 45 U.S.C. Sec. 51, *et seq.*, ("the FELA"), to recover damages for personal injuries sustained by Plaintiff while employed by Defendant Union Pacific and while engaged in interstate commerce.

### III.

Jurisdiction of this Honorable Court is conferred by 28 U.S.C. 1337.

1

PLF00704                                    PLF000704

EXHIBIT
TAYlOR
2
8-7-19

**IV.**

At all times material hereto, Plaintiff is and/or has been an employee of Defendant Union Pacific and/or its predecessor corporations, and the injuries and damages sustained by Plaintiff, as hereinafter set forth and for which Defendant is liable, were sustained by Plaintiff while engaged in the course of his employment duties, and in furtherance of interstate commerce and directly or closely and substantially affecting such commerce.

**V.**

Defendant Union Pacific is and was, at all times mentioned herein, a common carrier by railroad; owning, operating, and maintaining in interstate commerce, a railway system, involving railroad tracks and facilities located throughout the State of Louisiana and within the Eastern District of Louisiana.

**COUNT I**

**VI.**

Plaintiff re-alleges, as if copied herein *en extenso,* the allegations in paragraphs I-V.

**VII.**

On or about June 12, 2014, Plaintiff was in the usual and customary performance of his duties as a Conductor, working for Defendant Union Pacific in its Avondale Yard, within the Parish of Jefferson, State of Louisiana.

**VIII.**

In the course of his assigned work duties of switching railcars, Plaintiff encountered a defective coupler system on a railcar while pulling pins during a kicking operation. Accordingly, Plaintiff was forced to walk alongside the railcar, on uneven ballast, to continuously hold up the

2

PLF00705                                                    PLF000705

Pin Lifter/cut lever to accomplish the task of separating/kicking of the railcars. During this operation, Plaintiff suffered an injury to his right leg, *inter alia.*

### IX.

The aforesaid injuries were incurred as a result of Union Pacific's negligent conduct and its absolute liability for its violation of the Federal Safety Appliance Act, 49 U.S.C. 20302(a)(1)(A), on that date.

### X.

Plaintiff's injuries were caused in whole or in part by the negligence of Defendant Union Pacific, and in the following particulars:

(a)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to use reasonable care to provide Plaintiff with a reasonably safe place in which to work;

(b)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to comply with the applicable Federal Regulations found in Title 49, enacted for the safety and protection of railroad employees;

(c)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to use care by requiring Plaintiff to work in unsafe working conditions;

(d)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to inspect and maintain the Pin Lifter and cut levers on railcars in a safe condition;

(e)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to inspect, maintain and repair unsafe walking conditions in areas where its employees were required to walk;

3

(f)     In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to exercise reasonably safe methods for work when it knew or should have known of such unsafe working conditions, and that such conditions were reasonably likely to cause substantial harm;

(g)     In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to provide reasonably adequate supervision to ensure that safe conditions and methods of work were available and it knew or should have known thereof that such lack of safe walking conditions would likely cause substantial harm;

(h)     In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to provide reasonably adequate assistance, manpower, and time for work and/or breaks when it knew or should have known of such unsafe working conditions;

(i)     In that Union Pacific violated its own Safety and Operating Rules; and

(j)     In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to employ and require safe working practices, particularly those in connection with immediately inspecting and repairing holes, loose ballast, embankments, ruts and/or depressions in its switching yard walkways.

## XI.

As a result of the negligence of Defendant Union Pacific, along with its absolute liability due to its violation of the FSAA, Plaintiff suffered painful injuries to his lower back, *inter alia*. Since the injury of June 12, 2014, Plaintiff experienced some physical pain and the ability to enjoy some of the various pleasures of life, however, Plaintiff was able to continue working for Defendant Union Pacific, until the accident of on or about February 9, 2015.

4

PLF00707                                    PLF000707

## COUNT II

### XII.

Plaintiff re-alleges, as if copied herein *en extenso,* the allegations in paragraphs I-V.

### XIII.

On or about February 9, 2015, Plaintiff was in the usual and customary performance of his duties as a Brakeman, working for Defendant Union Pacific, at the Grain Station in Ama, Louisiana, within the Parish of St. Charles, State of Louisiana.

### XIV.

On said date, at approximately 4:30 a.m., in the course of his assigned duties, Plaintiff was walking alongside a train performing a brake test; and while proceeding in the walking path, suddenly and without warning, encountered a deep "sink" hole, causing Plaintiff to injure his right leg and lower back, *inter alia.*

### XV.

The aforesaid injuries were incurred as a result of Union Pacific's negligent conduct and violation of various Federal Regulations on that date.

### XVI.

Plaintiff's injuries were caused in whole or in part by the negligence of Defendant Union Pacific generally and in the following particulars:

(a)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to use reasonable care to provide Plaintiff with a reasonably safe place in which to work;

(b)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to comply with the applicable Federal Regulations found in Title 49,

5

enacted for the safety and protection of railroad employees;

(c)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to use care by requiring Plaintiff to work in unsafe working conditions;

(d)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to provide adequate lighting in its yard for the employees to work safely;

(e)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to inspect, maintain and/or repair unsafe walking conditions in areas where its employees were required to walk;

(f)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to exercise reasonably safe methods for work when it knew and/or should have known of such unsafe working conditions, and that such conditions were reasonably likely to cause substantial harm;

(g)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to provide reasonably adequate supervision to ensure that safe conditions and/or methods of work were available and it knew or should have known thereof that such lack of safe walking conditions would likely cause substantial harm;

(h)    In that Union Pacific violated its own Safety and Operating Rules; and

(i)    In that Union Pacific, in violation of its non-delegable duty under the FELA, failed to employ and/or require safe working practices, particularly those in connection with immediately inspecting and repairing holes, loose ballast, embankments, ruts and/or depressions in its switching yard walkways.

## XVII.

As a result of the negligence of Defendant Union Pacific, Plaintiff suffered severe and

PLF00709                                                PLF000709

painful injuries and has physical limitations and restrictions regarding his right knee and lower back, *inter alia*. Since the injury of February 9, 2015, Plaintiff has experienced and endured pain and may, for an indefinite period of time into the future, experience and endure pain, suffering, inconvenience, irritation, annoyance, limits, restrictions, impairment of his body; has endured and may, for an indefinite period of time into the future, endure mental pain and anguish, past and future; has incurred and will incur further medical expenses associated with the treatment of his knee and back; has been placed at risk for further injury; has suffered the loss and/or impairment of the ability to engage in his usual activities and occupation; has suffered the loss and/or impairment of his earnings and earning capacity; has suffered the loss and/or impairment of his general health, strength and vitality; and has suffered the loss and/or impairment of the ability to enjoy the various pleasures of life.

## DAMAGES

## XVIII.

As a result of the incidents complained of in Counts I and II, Plaintiff demands all damages reasonable in the premises for the following:

A) Physical Pain and Suffering, Past & Future

B) Mental Anguish , Past & Future

C) Permanent Impairment and Limitation

D) Loss of Enjoyment of Life's Pleasures;

E) Past Lost Wages

F) Future Loss of Earning Capacity and Fringe Benefits;

G) Unpaid Medical Bills; and

H) Future Life Care needs and Medical Expenses

PLF00710                                        PLF000710

**WHEREFORE**, Plaintiff Adam C. Scott prays that Defendant Union Pacific Railroad Company be duly cited and served with a copy of this Complaint and be made to appear and answer same, and after due proceedings had, there be judgment rendered herein in favor of Plaintiff Adam C. Scott and against Defendant Union Pacific Railroad Company, for all damages reasonable in the premises, together with legal interest thereon, from date of judgment, until paid, and for all costs of these proceedings.

Respectfully submitted,

**ROME, ARATA, BAXLEY & STELLY, L.L.C.**

/s/  Blake G. Arata, Jr.
BLAKE G. ARATA, JR., Bar No. 1697
C. PERRIN ROME, III, Bar No. 17774
W. CHAD STELLY, Bar No. 21140
650 Poydras Street, Suite 2017
New Orleans, Louisiana  70130
Telephone: (504) 522-9980
Facsimile: (504) 522-9971
E-mail:barata@romearata.com
      wcstelly@romearata.com
Attorneys for Plaintiff Adam C. Scott

**PLEASE SERVE:**

**UNION PACIFIC RAILROAD COMPANY**
through its Agent for Service of Process:
CT Corporation Systems
5615 Corporate Blvd., Suite 400B
Baton Rouge, Louisiana  70808

8

PLF00711                                PLF000711

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA  ☒ EEOC | 461-2017-00121 |

| Louisiana Commission On Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Johnny Taylor | (225) 450-2820 | 1970 |

Street Address — City, State and ZIP Code
14047 West Creek Drive, Gonzales, LA 70737

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| UNION PACIFIC RAILROAD | 500 or More | (225) 338-2817 |

Street Address — City, State and ZIP Code
4366 Main Street, Addis, LA 70710

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Union Pacific Railroad | 500 or more | 402-544-8071 |

Street Address — City, State and ZIP Code
1400 Douglas Street Stop 310 — Omaha, NE 68179

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 04-01-2016  ~~12-01-2015~~   Latest 10-05-2016
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):
I began my employment with Union Pacific Railroad on September 12, 2007, most recently as the Manager of Track Maintenance earning $95,000.00. In April 2016, I was denied a promotion to the Director of Track Maintenance. Bryan Shields was selected for the position even though I had more education and/or experience then him because Mr. Shields does not have a college degree. In August 2016, Mr. Shields left Lavonia Service Unit and the position became opened. In September Mark Oldham was selected for the position. On September 13, 2016, I filed an EEO Complaint with the company about not being promoted. On October 4, 2016, I filed an EEO Complaint for retaliation with the company and was placed on administrative leave after telling my Supervisor, Mark Oldham I could not finish work that day because earlier that morning I went to the doctor for treatment. Mr. Oldham told me that if I couldn't by rail with him that day, I wasn't fit to do my job. On October 5, 2016, I was discharged but the company brought me back on October 21, 2016, because of what happened on October 4, 2016, when I went to the doctor. I have a hard copy of my EEO Complaints from the company saying, "they're conducting an investigation". The company employs over 500 employees. In October 2015 Mr. Shields was transferred to position of manager of Track Project. Bryan Shields was transferred to position though I had more education and/or experience.
No reason was given for these actions taken against me.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| X  12/19/2016   Johnny Tay   Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |



EXHIBIT
TAYLOR
3
8-7-19

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 461-2017-00121 |

| Louisiana Commission On Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

I believe I have been discriminated against because of my race, Black, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and discriminated against because of my age, 46 years, in violation of the Age Discrimination in Employment Act of 1967, in that, the positions I have applied for, the persons selected have been White and younger than me.

---

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| X _____<br> Date          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | | |
|---|---|---|
| **To:** Johnny Taylor<br>14047 West Creek Drive<br>Gonzales, LA 70737 | **From:** | New Orleans Field Office<br>Hale Boggs Federal Building<br>500 Poydras Street, Room 809<br>New Orleans, LA 70130 |

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| 461-2017-00121 | Uma Kandan,<br>Enforcement Manager | (504) 595-2855 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

*[signature]*

**Keith T. Hill,**
**Director**

**SEP 2 1 2017**
*(Date Mailed)*

Enclosures(s)

cc     Pete Jeyaram
       EEO Director
       Union Pacific
       1400 Douglas St, STOP 0310
       Omaha, NE 68179

Johnny Taylor
461-2017-00121

1 of 107

PLF00717

PLF00717



EXHIBIT
Taylor
4
8-7-19

## RECOMMENDATION FOR CLOSURE

**TO:**    Keith Hill, Field Director

**FROM:**    Amy Stiles, Investigator

**SUBJECT: Johnny Taylor vs  UNION PACIFIC RAILROAD CO 001   Charge # 461-2017-00121C**

I recommend closure/dismissal of the subject charge for the reason explained below:

| | |
|---|---|
| ■ No Jurisdiction (explain below) | ■ Signed Settlement Agreement with EEOC |
| ■ Not Reasonable Cause | ■ Conciliation Failure |
| ■ ADEA Suit by CP | ■ Successful Conciliation |
| ■ Failure To Accept Full Relief | ■ Withdrawal w/benefits |
| ■ Other (bankruptcy, duplicate, etc...explain) | ■ Withdrawal w/o benefits |
| | ■ RTS issued on request |

The following analysis/information is provided in support of the closure recommendation:

CP alleges that he was not promoted, but white, less educated people were. CP alleges that he filed an internal complaint and was then placed on administrative leave. CP filed a retaliation complaint and was subsequently brought back to work.

Respondent contends that CP applied for promotional positions in July 2016 and September 2016.  Respondent contends that CP was not more qualified that the person selected.  In both cases, the person selected for the position had more years of experience and more supervisory experience than CP, and were in the PAG. Respondent admits that CP did complain about not being selected but that CP was not more qualified and his complaint was closed.  Respondent contends that on October 5, 2016, CP told his supervisor that he was too stressed and didn't feel safe to go out on the track and work so he was placed on admin leave with pay until he was cleared to return to work by the EAP.

Signature of Investigator:  _____

Signature of Supervisor:  _____

Signature of Enforcement Manager (as warranted):  _____

Johnny Taylor
461-2017-00121

3 of 107

THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY TAYLOR | CIVIL ACTION NO. 3:18-cv-01110 |
| VERSUS | JUDGE SHELLY D. DICK |
| UNION PACIFIC RAILROAD COMPANY, INC. | MAGISTRATE JUDGE ERIN WILDER-DOOMES |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

**TO:**    Union Pacific Railroad Company

*Through its counsel of record*

Mr. David A. Fraser
dfraser@fraser-law.com
FRASER, WHEELER & COURTNEY, L.L.P.
P.O. Box 4886
Lake Charles, LA 70606-4886
Facsimile: (337) 474-4761

Ms. Linda C. Schoonmaker
lschoonmaker@seyfarth.com
Mr. Brian A. Wadsworth
bawadsworth@seyfarth.com
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas 77002-2812
Facsimile: (713) 225-2340

The Plaintiff, Johnny Taylor, responds to Defendant Union Pacific Railroad Company

(hereinafter "Union Pacific")'s First Set of Requests for Production, propounded and received on

April 29, 2019, as follows.

1


EXHIBIT
Taylor
5
8-7-19

Plaintiff produced documents identified as PLF00001-848 on April 11, 2019. Documents identified as PLF00849-868, PLF00870-1484 and OSHA00001-172 are attached hereto. The audio recording identified as PLF00869 will be sent to defense counsel via United States mail this same day. No further responsive documents are in Plaintiff's custody or control at this time. However, Plaintiff reserves the right to supplement these responses as needed throughout discovery.

**REQUEST 1.**

Any documents identified by you in your Rule 26 Disclosures, to the extent not already produced.

**ANSWER:**

All documents identified in Plaintiff's initial disclosures (PLF00001-848) were produced on April 11, 2019.

**REQUEST 2.**

Any and all witness statements obtained by or on behalf of yourself concerning or regarding the facts underlying your claims in this lawsuit.

**ANSWER:**

No responsive documents are within Plaintiff's custody or control.

**REQUEST 3.**

Any and all tape recordings, voicemails, audio recordings, or transcripts thereof, of any individual concerning or regarding the facts and circumstances underlying your lawsuit.

**ANSWER:**

The video recording dated January 23, 2018 (PLF00868) and the audio recording dated October 21, 2016 (PLF00869) are responsive to this request.

**REQUEST 4.**

2

Any and all correspondence, memos, prognosis, diagnosis or similar documentation from any and all medical or mental healthcare professionals who you have seen, been evaluated by, or treated by for any damages which you claim or intend to claim in this lawsuit.

**ANSWER:**

No responsive documents are within Plaintiff's custody or control. Responsive documents are in the possession of the health care providers identified in response to Interrogatory No. 3. Plaintiff will supplement this response upon receipt of his medical records.

**REQUEST 5.**

Any calendars, journals, and diaries that you maintained during your employment with Union Pacific.

**ANSWER:**

PLF00870-929, 935-958, 960-982, and 996-1001 are responsive to this request.

**REQUEST 6.**

Any notes concerning your employment with Union Pacific that you maintained during your employment with the Union Pacific.

**ANSWER:**

PLF00870-929, 935-958, 960-982, and 996-1001 are responsive to this request.

**REQUEST 7.**

Any documents concerning your job performance that you received during your employment with Defendant, including, without limitation, any written or oral performance reviews or appraisals.

**ANSWER:**

3

PLF00401-406, 413-420, 556-559, 715, 793-797, 803-805, and 809 are responsive to this request.

**REQUEST 8.**

Any and all documentation you provided to any state or federal agency, including the Occupational Safety and Health Administration, United States Department of Labor, regarding your allegations in the Complaint.

**ANSWER:**

OSHA00001-172 are responsive to this request.

**REQUEST 9.**

Any and all documentation you received from any state or federal agency, including the Occupational Safety and Health Administration, United States Department of Labor, regarding your allegations in the Complaint.

**ANSWER:**

Plaintiff objects to this request as redundant. See response to Request 8. No documents were withheld pursuant to this objection.

**REQUEST 10.**

Documents that support or refute your allegations in Paragraph 12 of the Complaint that "Mr. Begley threatened to terminate Mr. Taylor's employment if he reported any additional safety issues regarding tie clusters in the tracks under his management. That same day, Mr. Taylor called Mr. Faaborg and informed him of Mr. Begley's threat."

**ANSWER:**

PLF00873-875 and PLF00400 are responsive to this request.

**REQUEST 11.**

Documents that support or refute your allegations in Paragraph 13 of the Complaint that "... Mr. Taylor informed his superiors, including Jamal Chappelle, that he had made complaints to the FRA against John Begley ...."

**ANSWER:**

PLF00926-027 are responsive to this request.

**REQUEST 12.**

Documents that support or refute your allegations in Paragraph 14 of the Complaint that "... Union Pacific falsely reported the derailment to the FRA as being caused by a 'wide gauge' ...."

**ANSWER:**

PLF00554-555 are responsive to this request.

**REQUEST 13.**

Documents that support or refute your allegations in Paragraph 15 of the Complaint that "On January 3, 2016, ... Mr. Taylor informed Mr. Roppolo of Union Pacific's false report and assured him that the report was made without Mr. Taylor's knowledge or consent."

**ANSWER:**

PLF00554-555 are responsive to this request.

**REQUEST 14.**

Documents that support or refute your allegations in Paragraph 17 of the Complaint that "[d]uring the first week of February 2016, Mr. Begley called Mr. Taylor and told him that he would 'pay' for his November 20, 2015 comments regarding whistleblower complaints."

**ANSWER:**

PLF00939-940 are responsive to this request.

5

**REQUEST 15.**

Documents that support or refute your allegations in Paragraph 18 of the Complaint that "Mr. Roppolo asked Mr. Taylor if Union Pacific employees received 'push back' from their superiors after reporting unsafe track conditions. Mr. Taylor answered 'yes.'"

**ANSWER:**

PLF0089 is responsive to this request.

**REQUEST 16.**

Documents that support or refute your allegations in Paragraph 20 of the Complaint that "Mr. Workman asked Mr. Taylor if he was 'in bed with the FRA.'"

**ANSWER:**

PLF00954 are responsive to this request.

**REQUEST 17.**

Documents that support or refute your allegations in Paragraph 21 of the Complaint that "Mr. Taylor has received numerous threats of termination from Union Pacific employees for taking tracks out of service due to unsafe conditions."

**ANSWER:**

OSHA0030-113, PLF00793-797, PLF00799, PLF800-801, PLF00803-805, PLF00806, PLF00807-808, PLF00810, PLF00811, PLF00816, PLF00843-0848, PLF0862, PLF00939-940, PLF00960-982, and PLF00996-1001 responsive to this request.

**REQUEST 18.**

Documents that support or refute your allegations in Paragraph 22 of the Complaint that "... on or about May 29 or May 30, 2017, while Mr. Taylor was away on vacation, Union Pacific falsely reported the derailment to the FRA as track-caused."

**ANSWER:**

PLF00843-848, PLF00959, and PLF00967-971 are responsive to this request.

**REQUEST 19.**

Documents that support or refute your allegations in Paragraph 24 of the Complaint that "... Kenneth Stuart threatened to take away Mr. Taylor's welding gang, expressly stating that this would be a consequence of his taking the track out of service."

**ANSWER:**

PLF00803-805, PLF00980-981 and PLF00843-848 are responsive to this request.

**REQUEST 20.**

Documents that support or refute your allegations in Paragraph 25 of the Complaint that "Mr. Taylor sent the documentation to Mr. Stuart, but Mr. Stuart did not forward the documentation to Mr. Wheeland."

**ANSWER:**

PLF00776-786, PLF00843-848, and PLF00996-998 are responsive to this request.

**REQUEST 21.**

Documents that support or refute your allegations in Paragraph 28 of the Complaint that "Mr. Stuart falsely accused Mr. Taylor of failing to send him the derailment-related documented ... [and] informed Mr. Taylor and Nicolas Isaac that, although he received the documentation from Mr. Taylor, he did not forward it to Mr. Wheeland."

7

**ANSWER:**

PLF00776-786, PLF00843-848, PLF0901 and PLF00996-998 are responsive to this request.

**REQUEST 22.**

Documents that support or refute your allegations in Paragraph 37 of the Complaint that "Mr. McMillan admitted that he had not conducted a thorough investigation."

**ANSWER:**

PLF00812-816, PLF00987-988, PLF01000-1001, and PLF01004-1005 are responsive to this request.

**REQUEST 23.**

Documents that support or refute your allegations that you engaged in protected activity under the FRSA during your employment at Union Pacific.

**ANSWER:**

OSHA0030-113, PLF00400, PLF00554-555, PLF00772-773, PLF0074-775, PLF000776-788, PLF00787-788, PLF0799, PLF00800-801, PLF00802, PLF00803-805, PLF00806, PLF00807-808, PLF00810, PLF00811, PLF00816, PLF00843-00848, PLF00849-861, PLF00863-867, PLF00868, PLF00869, PLF00870-900, PLF00873-875, PLF00880-890, PLF00930, PLF00939-940, PLF00959, PLF00960-982, and PLF0096-1001 are responsive to this request.

**REQUEST 24.**

Documents that support or refute your allegations that Union Pacific retaliated against you for engaging in protected activity under the FRSA.

**ANSWER:**

8

OSHA0030-113,  PLF00400,  PLF00407-408,  PLF00554-555,  PLF000776-788, PLF00793-797,  PLF0799,  PLF00800-801,  PLF00803-0805,  PLF00806,  PLF00807-808, PLF00810, PLF00811, PLF00812-814, PLF00817, PLF00816, PLF00817-818, PLF00843-848, PLF00862, PLF00869, PLF00870-900, PLF00873-875, PLF00880-890, PLF00930, PLF00931-933, PLF00934,  PLF00939-940, PLF00960-982, and PLF0096-1001 are responsive to this request.

**REQUEST 25.**

Communications and correspondence between you and the Federal Railroad Administration ("FRA") or any member or employee of the FRA regarding your allegations in the Complaint.

**ANSWER:**

PLF00400 and PLF00554-555 are responsive to this request.

**REQUEST 26.**

Communications and correspondence between you and Union Pacific regarding your allegations in the Complaint.

**ANSWER:**

PLF00401-408, PLF00554-559, PLF00715, PLF00716-797, PLF00799-818, PLF00869, PLF00930-934, PLF00959, and PLF00987-992 are responsive to this request.

**REQUEST 27.**

Communications and correspondence between you and any former Union Pacific employee regarding your allegations in the Complaint.

**ANSWER:**

No such documents are within the Plaintiff's custody or control.

9

**REQUEST 28.**

All documents which relate to, bear upon, or provide evidence relating to any claim for damages set forth in the Complaint and any further amended complaint to which you now claim to be entitled, including (but not limited to) any evidence of lost compensation, lost benefits, diminished earning capacity, mental anguish, punitive damages, attorneys' fees, and/or any other element of claimed damages.

**ANSWER:**

PLF00809, PLF00811, PLF00817-818, PLF00984-986, PLF00989-995, PLF001002-1003, PLF01006-1024, PLF01025-1026, PLF01027-1028 and PLF01029-1042 are responsive to this request.

**REQUEST 29.**

All documents relating to any previous allegations of retaliation or whistleblower claims that you have made to any employer or asserted in any legal proceeding, to specifically include (a) any written complaint made; (b) any notes (or diary or journal entries) referencing the alleged discrimination or the complaint regarding the allegation; and (c) all correspondence with the employer or administrative agency related to the allegations.

**ANSWER:**

No responsive documents are within Plaintiff's custody or control.

**REQUEST 30.**

Records and receipts for all costs you have paid to bring and maintain this legal action.

**ANSWER:**

PLF01467-1484 are responsive to this request.

**REQUEST 31.**

10

Documents reflecting any attempt by you to mitigate your alleged damages in this case, including the fee arrangement with your attorney and any income you have earned since your termination of employment with Union Pacific.

**ANSWER:**

PLF01013-1017 and PLF01029-1041 are responsive to this request.

**REQUEST 32.**

All resumes, or any drafts of resumes, you used or created at any time since the beginning of your employment with Union Pacific.

**ANSWER:**

PLF01017 is responsive to this request.

**REQUEST 33.**

All documents concerning or relating to any criminal arrest, criminal conviction, criminal indictment, or any other allegations of criminal activity made against you in the past ten (10) years.

**ANSWER:**

No responsive documents are within Plaintiff's custody or control.

**REQUEST 34.**

Any and all documentation reflecting your attempts to locate other employment since your termination of employment with Union Pacific, including, but not limited to, all communications from your home e-mail concerning (a) job search; (b) damages; (c) communications of any kind with current or former employees of Union Pacific.

**ANSWER:**

PLF01013-1017 and PLF01029-1041 are responsive to this request.

**REQUEST 35.**

11

Complete and sign the Medical Authorization release attached as Exhibit A.

**ANSWER:**

Please see attached.

**REQUEST 36.**

Complete and sign the Release of Employment Records attached as Exhibit B.

**ANSWER:**

As Mr. Taylor has not been employed since his termination from Union Pacific, no such records exist. However, if and when Mr. Taylor becomes employed, he will supplement his response to this Request.

**REQUEST 37.**

Complete and sign the Release of Tax Returns attached as Exhibit C.

**ANSWER:**

Please see attached.

<div align="right">

**RESPECTFULLY SUBMITTED:**

SMITH LAW FIRM

  */s/ Robert Moseley Schmidt*
J. ARTHUR SMITH, III, T.A.
La. Bar Roll No. 07730
ROBERT MOSELEY SCHMIDT
La. Bar Roll No. 37934
830 North Street
Baton Rouge, LA 70802
Telephone (225) 383-7716
Facsimile (225) 383-7773
*Attorneys for Plaintiff,*
*Johnny Taylor*

</div>

12

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing has this day been served upon all

counsel of record via U.S. Mail, facsimile transmission, and/or E-mail as follows to:

**David A. Fraser**
dfraser@fraser-law.com
**Fraser, Wheeler & Courtney, L.L.P.**
P.O. Box 4886
Lake Charles, LA 70606-4886
Telephone:    (337) 478-8595
Facsimile:    (337) 474-4761

**Linda C. Schoonmaker (pro hac vice)**
lschoonmaker@seyfarth.com
**Seyfarth Shaw LLP**
700 Milam Street, Suite 1400
Houston, Texas  77002-2812
Telephone:    (713) 225-2300
Facsimile:    (713) 225-2340

*Attorneys for Defendant*
*Union Pacific Railroad Company*

Baton Rouge, Louisiana this 7th day of June, 2019.


            */s/ Robert Moseley Schmidt*
            Robert Moseley Schmidt

# SMITH LAW FIRM

### ATTORNEYS AT LAW

J. ARTHUR SMITH, III
*jasmith@jarthursmith.com*

ROBERT MOSELEY SCHMIDT
*rschmidt@jarthursmith.com*

J. ARTHUR SMITH, IV
*asmithiv@jarthursmith.com*

May 30, 2018

**TO:**   Kelly Knighton
Regional Administrator, Region VI
United States Department of Labor
Occupational Safety and Health Administration
A Maceo Smith Federal Building
525 Griffing Street, Suite 602
Dallas, Texas 75202

**RE:**   Federal Railroad Safety Act Whistleblower Complaint
Against Union Pacific Railroad Company
Submitted on behalf of Johnny Taylor

Dear Mr. Knighton,

We represent Mr. Johnny Taylor, who was employed by Union Pacific Railroad Company ("Union Pacific") from September 12, 2007 until February 27, 2018. The purpose of this letter is to inform you of numerous violations of the Federal Railroad Safety Act (49 U.S.C. § 20109) by Union Pacific. This letter shall serve as a formal "complaint," to initiate proceedings for relief, for purposes of § 20109(d)(1).

Mr. Taylor has been denied promotional opportunities, threatened with termination, harassed, and ultimately terminated by Union Pacific in retaliation for his acts of: (i) participating, cooperating, and assisting in investigations by the Federal Railroad Administration ("FRA") of unlawful activities and safety violations by Union Pacific; (ii) filing complaints with the Occupational Safety and Health Administration ("OSHA") alleging violations of the FRSA; (iii) refusing to violate or assist in the violation of federal railroad safety regulations; (iv)

830 NORTH STREET, BATON ROUGE, LOUISIANA . 70802 . WWW.JARTHURSMITH.COM
OFFICE: 225-383-7716 . TOLL FREE: 855-313-7716 . FAX: 225-383-7773

300 WASHINGTON STREET, SUITE 100C, MONROE, LOUISIANA 71201
OFFICE AND FAX: (318) 323-2006

OSHA00001



reporting hazardous safety and security conditions in good faith; and (v) prohibiting and refusing to authorize the use of unsafe railroad tracks.

## FACTUAL BACKGROUND

Mr. Taylor was hired by Union Pacific into a program designed to advance staff into management positions. He was promoted to Assistant Manager of Track Maintenance in October 2008, and to Manager of Track Maintenance of the Livonia Service Unit in May 2010, which position he occupied until his termination. Mr. Taylor was responsible for railroad tracks throughout most of Louisiana, from Avondale, Louisiana to Livonia, Louisiana. His responsibilities in this position included maintaining and inspecting the tracks and ensuring strict compliance with standards set by the FRA. Mr. Taylor was therefore considered security personnel for purposes of the FRSA, as his job entailed the protection of individuals and property transported by the railroad. During his tenure with Union Pacific, Mr. Taylor was a good and diligent employee and performed his work duties to the best of his abilities. He never had any disciplinary or performance related issues prior to 2018, and his performance reviews were consistently positive.

On January 8, 2014, FRA inspector Robert Faaborg inspected the tracks at the Union Pacific subdivision in Livonia, Louisiana. Mr. Faaborg found numerous defects, including areas under a "slow order" of forty (40) miles per hour ("mph") but which could not support a train traveling over 10 mph, numerous defective track ties,[1] and areas that did not meet FRA standards. Mr. Faaborg instructed Mr. Taylor to write up defects for all of the tie clusters, which he did.

---

[1] "Track ties" are the wooden ties that support the railroad track. They must be replaced regularly to ensure safety and to prevent derailments.

830 NORTH STREET, BATON ROUGE, LOUISIANA . 70802 . WWW.JARTHURSMITH.COM
OFFICE: 225-383-7716 . TOLL FREE: 855-313-7716 . FAX: 225-383-7773

300 WASHINGTON STREET, SUITE 100C, MONROE, LOUISIANA 71201
OFFICE AND FAX: (318) 323-2006

OSHA00002

On March 6, 2014, Mr. Taylor met with his supervisor, John Begley, and Raymond Davis, Director of Track Maintenance, in Donaldsonville, Louisiana. Mr. Begley threatened to terminate Mr. Taylor's employment if he reported any additional safety issues regarding tie clusters in the tracks under his management. The same day, Mr. Taylor called Mr. Faaborg and informed him of Mr. Begley's threat.

On November 20, 2015, Mr. Taylor met with several Union Pacific staff. At this meeting, Mr. Taylor informed his superiors, including Jamal Chappelle, that he had made complaints to the FRA against John Begley due to his March 6, 2014 threat to terminate Mr. Taylor for writing up defects.

On December 9, 2015, a train derailment occurred on Track # 16 in Avondale, Louisiana. After the derailment, FRA Inspector Nicolas Roppolo inspected the track along with an FRA Deputy Regional Administrator, Mr. Taylor, Brad Usea, and Nicolas Issac. Mr. Taylor, Mr. Usea, and Mr. Issac, who were the only persons present who were qualified under 49 C.F.R. § 213.7 to inspect railroad tracks, all agreed that the derailment was caused by "butted knuckles" (a "human factor" derailment). However, Union Pacific falsely reported the derailment as being caused by a "wide gauge" (a "track caused" derailment). On January 3, 2016, Mr. Roppolo contacted Mr. Taylor regarding the inaccurate reporting. Mr. Taylor informed Mr. Roppolo that he did not order that the report list the derailment as "track caused," and that the false report was made by someone else without Mr. Taylor's knowledge or consent.

On January 12, 2016, Mr. Roppolo contacted Mr. Begley to inform him of the false report and direct that the inaccuracy be corrected. Mr. Roppolo noted that, during his inspection, nothing indicated that the gauges were wide. Mr. Roppolo asked whether persons not qualified under § 213.7 were inspecting railroad tracks and reporting incorrect causes, in light of the fact

830 NORTH STREET, BATON ROUGE, LOUISIANA . 70802 . WWW.JARTHURSMITH.COM
OFFICE: 225-383-7716 . TOLL FREE: 855-313-7716 . FAX: 225-383-7773

300 WASHINGTON STREET, SUITE 100C, MONROE, LOUISIANA 71201
OFFICE AND FAX: (318) 323-2006

OSHA00003

that the report was contrary to the conclusions of all of the qualified inspectors who were present.

During the first week of February 2016, Mr. Begley called Mr. Taylor and told him that he would "pay" for his November 20, 2015 comments regarding whistleblower complaints.

Mr. Roppolo asked Mr. Taylor if Union Pacific employees received "push back" from their superiors after reporting unsafe track conditions. Mr. Taylor answered "yes."

On October 4, 2016, Mr. Taylor was not feeling well when he reported to work. His blood pressure was elevated due to job-related stress. Mr. Taylor met with his supervisor, Mark Oldham, and explained that he felt stressed because he believed he was being denied promotions in retaliation for reporting unsafe conditions to the FRA. Mr. Oldham took Mr. Taylor home, stating that Mr. Taylor was either being terminated or placed on unpaid administrative leave. Mr. Taylor was ultimately placed on paid administrative leave and returned to work three (3) weeks later. As justification for sending Mr. Taylor home and placing him on leave, Mr. Oldham later claimed that Mr. Taylor stated that he did not feel safe working on the tracks that day. Mr. Taylor denies ever having made that statement.

On November 1, 2016, during a meeting on the "business car train" between Greg Workman, Chief Engineer of Union Pacific Railroad, Mark Wheeland, and Chief Engineer of the Southern Region and Mark Oldham, Director of Track Maintenance of Livonia, Louisiana Service Unit, Mr. Workman asked Mr. Taylor if he was "in bed with the FRA." Mr. Taylor responded that if any individual associated with the FRA were to ask him a question, he would answer honestly.

Mr. Taylor has received numerous threats of termination from Union Pacific employees for taking tracks out of service due to unsafe conditions. On one such occasion, on March 28,

830 NORTH STREET, BATON ROUGE, LOUISIANA . 70802 . WWW.JARTHURSMITH.COM
OFFICE: 225-383-7716 . TOLL FREE: 855-313-7716 . FAX: 225-383-7773

300 WASHINGTON STREET, SUITE 100C, MONROE, LOUISIANA 71201
OFFICE AND FAX: (318) 323-2006

OSHA00004

2017, a derailment occurred at the "tail track" in the Avondale, Louisiana yard. Approximately twenty (20) derailments had taken place at this location during Mr. Taylor's tenure with Union Pacific. Mr. Taylor removed the Avondale tail track from service after an incorrect design led to a derailment. Daniel Jacques, Director of Train Service, became belligerent with Mr. Taylor due to his taking the track out of service, followed him, and cursed at him as he was trying to exit the conversation. On March 28, 2017, Mr. Taylor reported this incident to the Union Pacific EEO.

On May 28, 2017, Mr. Taylor investigated a derailment at Track 8 in Avondale, Louisiana along with Marc Oldham. Mr. Oldham concluded that the derailment was not caused by track conditions, and reported this to Mr. Taylor and those present. Nonetheless, on or about May 29 or May 30, 2017, Union Pacific falsely reported the derailment as track-caused. Mr. Taylor was on vacation at the time. Upon returning from vacation and discovering the false report, Mr. Taylor informed Mr. Roppolo of same.

On June 5, 2017, Mr. Taylor filed a complaint with Union Pacific EEO regarding Union Pacific's widespread falsification of railroad report documents submitted by Union Pacific to the FRA.

On November 2, 2017, after Mr. Taylor took the No. 1 Mainline Track out of service in Avondale, Louisiana, Kenneth Stuart threatened to take away Mr. Taylor's welding gang, expressly stating that this would be a consequence of taking the track out of service. Mr. Taylor filed a complaint with Union Pacific's EEO Department on the same day.

Between November 9 and November 21, 2017, three more derailments occurred at the Avondale track. Mr. Stuart instructed Mr. Taylor to document the FRA alignment defects that led to the derailments and email the documentation to Mr. Stuart, at which point Mr. Stuart

830 NORTH STREET, BATON ROUGE, LOUISIANA . 70802 . WWW.JARTHURSMITH.COM
OFFICE: 225-383-7716 . TOLL FREE: 855-313-7716 . FAX: 225-383-7773

300 WASHINGTON STREET, SUITE 100C, MONROE, LOUISIANA 71201
OFFICE AND FAX: (318) 323-2006

OSHA00005

would forward the documentation to Mark Wheeland. Mr. Taylor sent the documentation to Mr. Stuart, but Mr. Stuart did not forward the documentation to Mr. Wheeland.

On December 20, 2017, Mr. Taylor participated in a conference call that included Wesley Dooley, a Union Pacific EEO employee. Mr. Dooley stated that, if Mr. Stuart had taken away Mr. Taylor's welding gang, as he threatened to do, this would have created a safety risk. However, Mr. Dooley opined that there was no whistleblower violation, since Mr. Taylor had not yet been terminated.

On December 29, 2017, Mr. Taylor received a positive annual evaluation. Nothing in the evaluation suggested that Mr. Taylor had behaved inappropriately during the December 20, 2017 conference call. Nothing in the evaluation suggested that Mr. Taylor was a "quarrelsome employee." Mr. Taylor qualified for a performance bonus for 2017.

On January 9, 2018, Mr. Stuart informed Mr. Taylor and Nicolas Isaac that he did not send to Mr. Wheeland the documentation provided by Mr. Taylor in November of 2017.

On January 10, 2018, Mr. Taylor again took the Avondale track out of service in response to the November 2017 derailments. Mr. Stuart falsely accused Mr. Taylor of failing to send him the derailment-related documentation in November of 2017.

On January 22, 2018, Mr. Taylor issued a slow order on a train track in White Castle, Louisiana. The same day, Mr. Taylor filed a complaint with Union Pacific EEO alleging harassment by Jacob Gilsdorf, Kenneth Stuart, Mark Wheeland, Phillip Hawkins, and Phil Kriefes. The same day, Mr. Taylor sent an email to the persons against whom he complained, informing them of his complaint. The email also stated that Mr. Taylor had informed Nicolas Roppolo about the unsafe track in Avondale, which was taken out of service on January 10.

830 NORTH STREET, BATON ROUGE, LOUISIANA . 70802 . WWW.JARTHURSMITH.COM
OFFICE: 225-383-7716 . TOLL FREE: 855-313-7716 . FAX: 225-383-7773

300 WASHINGTON STREET, SUITE 100C, MONROE, LOUISIANA 71201
OFFICE AND FAX: (318) 323-2006

OSHA00006

Mr. Gilsdorf proceeded to harass Mr. Taylor for taking the White Castle track out of service, which Mr. Taylor had done pursuant to Union Pacific policy. Mr. Taylor reported this harassment to the FRA for investigation on January 24, 2018, pursuant to federal regulations.

On January 25, 2018, Mr. Taylor participated in a meeting with Jacob Gilsdorf, Kenneth Stuart, and Phillip Hawkins. During the meeting, Mr. Gilsdorf threatened to fire Mr. Taylor due to: (i) Mr. Taylor's allegedly "quarrelsome behavior" and other alleged bad conduct; (ii) Mr. Taylor's alleged failure to provide the necessary information to Mr. Stuart prior to taking the Avondale track out of service on January 10; and (iii) Mr. Taylor's alleged failure to provide enough information prior to his issuance of a slow order on January 22. Contrary to Mr. Gilsdorf's assertions, Mr. Taylor sent the necessary information by email on: (i) November 24, 2017; (ii) January 10, 2018; (iii) January 11, 2018; and (iv) January 22, 2018.

On January 29, 2018, Mr. Stuart and Phillip Hawkins arrived at Mr. Taylor's house unannounced and informed Mr. Taylor that he was being placed on administrative leave. Mr. Stuart and Mr. Hawkins demanded Mr. Taylor's laptop, phone, and truck keys. The same day, Mr. Taylor filed a complaint with Union Pacific EEO, alleging retaliation as a result of this incident.

On January 31, 2018, Mr. Taylor met with Jacob Gilsdorf and Cliff Bowman at the Livonia Yard. Mr. Gilsdorf and Mr. Bowman asked Mr. Taylor to sign a document agreeing to a disciplinary plan due to: (i) Mr. Taylor's allegedly "quarrelsome behavior" and other alleged bad conduct; (ii) Mr. Taylor's alleged failure to provide the necessary information to Mr. Stuart prior to taking the Avondale track out of service on January 10; and (iii) Mr. Taylor's alleged failure to provide enough information prior to his issuance of a slow order on January 22.

830 NORTH STREET, BATON ROUGE, LOUISIANA . 70802 . WWW.JARTHURSMITH.COM
OFFICE: 225-383-7716 . TOLL FREE: 855-313-7716 . FAX: 225-383-7773

300 WASHINGTON STREET, SUITE 100C, MONROE, LOUISIANA 71201
OFFICE AND FAX: (318) 323-2006

OSHA00007

On February 1, 2018, Mr. Taylor received a letter from Scott McMillan, a Union Pacific EEO Investigator, informing him that an investigation had begun into Mr. Taylor's January 22, 2018 complaint.

On February 8, 2018, Mr. Taylor received a letter from Mr. McMillan informing him that an investigation had begun into Mr. Taylor's January 29, 2018 complaint.

On February 27, 2018, Mr. Taylor met Mr. Stuart and Mr. Wheeland at a Starbucks in Gonzales, Louisiana, at which Mr. Wheeland provided Mr. Taylor with a termination letter. The same day, Mr. Taylor filed an EEO report alleging that his termination was in retaliation for filing EEO complaints.

On March 6, 2018, Mr. McMillan informed Mr. Taylor that he had not finished his investigation, meaning that Mr. Taylor was fired in the midst of an ongoing EEO investigation. Mr. McMillan also informed Mr. Taylor that he was unaware that Mr. Taylor had provided the required documentation to Mr. Stuart in connection with the Avondale derailments and the slow order. Mr. McMillan admitted that he had not conducted a thorough investigation.

On March 23, 2018, Mr. Taylor received a letter from Mr. McMillan stating that Union Pacific's EEO investigation was complete and that no violations had been found.

## CLAIMS ASSERTED

Since his promotion to Manager of Track Maintenance, Mr. Taylor has unsuccessfully applied for numerous promotions, including in May, 2014, January 2016, July 2016, September 2016, and September 2017. These promotions instead went to less qualified individuals. Mr. Taylor respectfully submits that these denials of promotion were caused by Union Pacific's animosity toward him for reporting safety violations, which animosity is evidenced by the

830 NORTH STREET, BATON ROUGE, LOUISIANA . 70802 . WWW.JARTHURSMITH.COM
OFFICE: 225-383-7716 . TOLL FREE: 855-313-7716 . FAX: 225-383-7773

300 WASHINGTON STREET, SUITE 100C, MONROE, LOUISIANA 71201
OFFICE AND FAX: (318) 323-2006

OSHA00008

allegations hreinabove. Mr. Taylor respectfully submits that Union Pacific's multiple failures to promote him constitute retaliation under the Federal Railroad Safety Act (49 U.S.C. § 20109).

Mr. Taylor further submits that his termination was in retaliation for: (i) his participation in multiple FRA investigations; (ii) his complaints to the FRA, Union Pacific EEO, and the Equal Employment Opportunity Commission regarding safety violations and allegations of retaliation; and (iii) his removal of tracks from service due to unsafe conditions.

The reasons given by Union Pacific for Mr. Taylor's termination were that he was "quarrelsome" and disrespectful and that he did not provide sufficient information to Union Pacific prior to taking the Avondale track out of service on January 10, 2018. Mr. Taylor respectfully submits that these reasons are false and pretextual. First, Mr. Taylor never received a performance review that mentioned "quarrelsomeness" or disrespectful behavior. Second, neither Mr. Stuart nor anyone else at Union Pacific expressed that Mr. Taylor had been "quarrelsome" during his December 20, 2017 conference call with Mr. Dooley until *after* Mr. Taylor took the Avondale track out of service. Finally, Mr. Taylor did, in fact, produce all information requested by Union Pacific prior to taking the track out of service. Mr. Taylor respectfully submits that these inaccuracies, coupled with the numerous threats of termination he received due to his cooperation with the FRA, demonstrate that his termination was retaliatory and in violation of the FRSA's whistleblower provisions.

## RELIEF SOUGHT

In asserting this claim, Mr. Taylor seeks the following relief:

1. Reinstatement to a position with the same seniority status that Mr. Taylor would have had if not for the discriminatory denials of promotion and termination;

2. Backpay, with interest;

830 NORTH STREET, BATON ROUGE, LOUISIANA . 70802 . WWW.JARTHURSMITH.COM
OFFICE: 225-383-7716 . TOLL FREE: 855-313-7716 . FAX: 225-383-7773

300 WASHINGTON STREET, SUITE 100C, MONROE, LOUISIANA 71201
OFFICE AND FAX: (318) 323-2006

OSHA00009

3. Special damages, including lost future wages, medical costs, attorneys' fees, litigation costs, and expert witness fees;

4. General damages, including those for mental and emotional anguish and loss of enjoyment of life; and

5. Punitive damages in the amount of $250,000.

With kindest regards, I am

Sincerely yours,

J. Arthur Smith, III

Encl. Ex. A, Ex. B, Ex. C

830 NORTH STREET, BATON ROUGE, LOUISIANA . 70802 . WWW.JARTHURSMITH.COM
OFFICE: 225-383-7716 . TOLL FREE: 855-313-7716 . FAX: 225-383-7773

300 WASHINGTON STREET, SUITE 100C, MONROE, LOUISIANA 71201
OFFICE AND FAX: (318) 323-2006

OSHA00010



<robert.faaborg@dot.gov>

01/08/2014 05:11 PM

To  <jtaylor1@up.com>, <JMBEGLEY@up.com>

cc  <jesse.price@dot.gov>, <nicholas.roppolo@dot.gov>, <LJGOMEZ@up.com>, <ddfinley@up.com>, <jay.sorah@dot.gov>

bcc

Subject  TODAY'S INSPECTION REPORT

History:  ⤷ This message has been forwarded.

1 attachment



ROB'S LIVONIA SUB INSPECTION 1-8-2014.pdf

Thanks for the help this week Johnny and Marcus. Overall the sub was in decent shape with the glaring exception of the tie conditions we found on Monday. Although some areas had a 40 mph slow order for tie condition, we found a couple of locations only good for 10, several large clusters from 7 to 11 defective ties in a row with significant geometry, and 4 or 5 spots outside of the slow orders that did not meet Class 4 standards. As we discussed, I did not walk all of the questionable areas and Johnny plans on walking these areas soon and taking whatever action is warranted. Marcus is sending a PI gang to install ties as needed. I was glad to hear these plans as large and potentially dangerous clusters will continue to develop from now until the production tie gang arrives, perhaps in July. I was a little surprised that a KEY route with such high volumes of hazardous materials had tie conditions like this, but it sounds like things will continue to be addressed until the tie gang arrives.

The yard at Donaldsonville has some joint tie issues and surface problems developing, and I understand this yard may be retired in a year or so as a new yard is being constructed. This may sound like a scene from a "B" movie, but I was struck by a little girl's voice calling out "Daddy" several times from outside one of the houses a few feet north of Track 1 as we got our PPE on and had our job briefing at Donaldsonville yard. She reminded me of the most important reason I do what I do and you folks do what you do. The family of that little girl is counting on us to keep her and them safe.

I hope we do.

Thanks again.

Rob Faaborg
FRA Region 5
Chief Inspector
817-913-3017



OSHA00011



**Mark A.**
**Wheeland/UPC**
01/14/2016 09:56 AM

To   John M. Begley/UPC@up

cc   David D. Finley/UPC@up, Russell S. Rohlfs/UPC@up, Heath D.
     Landrum/UPC@up, Johnny Taylor/UPC@up, Omar
     Monge/UPC@up, Phillip P. Hawkins/UPC@up, Bryan W.

bcc

Subject   Re: Avondale derailment on the 9th

This is inviting further investigation into our business by the FRA - per my previous correspondence, the cause of this derailment needs to be changed.

Mark

On Jan 14, 2016, 9:49:37 AM, "John M. Begley" <JMBEGLEY@up.com> wrote:
May want to re-evaluate the cause of this derailment

Marcus Begley
DTM Livonia
Service Unit
PO Box 217
Livonia, LA
70755
225-338-2974
Office
501-283-0132
Cell
402-271-3042
Fax
jmbegley@up.co
m

----- Forwarded by John M. Begley/UPC on 01/14/2016 09:47 AM -----

From: <nicholas.roppolo@dot.gov>
To: <jtaylor1@up.com>, <jmbegley@up.com>, <teallen@up.com>
Cc: <jesse.price@dot.gov>, <DDFINLEY@up.com>
Date: 01/12/2016 05:34 PM
Subject: Avondale derailment on the 9th



This email originated from outside of the company. Please use discretion if opening attachments or clicking on links.

According to this file sent to FRA that "butted knuckle" derailment in track #16 on 12-9 in

OSHA00012

Avondale was caused by wide gage............ You may recall I was at the site along with an FRA Deputy Regional Administrator. I measured the plate spacing and it was correct for 56 ½" gage if the rail hadn't been rolled out because of the impact of the butted knuckles. Mr. Taylor, Mr. Uzee, and Mr. Issac, were the only persons on site that I know to be qualified under 213.7 to inspect track and neither reported to me that the gage was wide, in fact all were in agreement that the derailment was caused by forces caused by butted knuckles. I did note that the tie-condition in the area of the POD was weak but saw nothing to indicate the gage was wide prior to the impact and subsequent derailment. No FRA defects were cited at or near the POD for defective ties although I did cite two crosstie defects about 250' west of the POD.

Are persons not qualified under 213.7 inspecting track at the Union Pacific in Avondale and reporting incorrect causes?

Please advise,

Nick Roppolo
*(See attached file: 201601121101.pdf)*

OSHA00013

 **BUILDING AMERICA®**

February 27, 2018

**PERSONAL & CONFIDENTIAL**

**VIA HAND DELIVERY**

Johnny Taylor
14047 West Creek Drive
Gonzales, LA 70737

EID # 0433859

Dear Mr. Taylor:

Effective immediately, your employment relationship with Union Pacific Railroad Company ("Union Pacific") is formally terminated. You are no longer required or permitted to report to work, to access Union Pacific property, or to perform any job duties on Union Pacific's behalf. You are disqualified from returning to any agreement craft where you may retain seniority and will not be considered for any future employment with the Union Pacific Railroad Company or any related companies.

You will be paid at your current salary rate through the date of record for your termination, February 27, 2018. In addition, your non-agreement employee medical coverage will continue through February 28, 2018, after which time you will be offered the opportunity to purchase COBRA continuation coverage. Your eligible unused vacation time and vacation time that was accrued this year for use next year will be paid to you in a lump sum and included in your last paycheck.

Please make immediate arrangements with me, to return any remaining company property. Additionally, you should make immediate arrangements to retrieve any personal belongings you may have.

Very Truly Yours,

Mark C. Wheeland

EXHIBIT
C

UNION PACIFIC RAILROAD
24125 Old Aldine Westfield Rd.
Spring, TX 77373

Mark Wheeland
Chief Engineer M of W
Southern Region

P 281-350-7584
C 402-
E M OSHA00014



BUILDING AMERICA

August 23, 2018

*Via Electronic Mail to:* rivera.hillary@dol.gov

Hillary Rivera
Federal Investigator
U.S. Department of Labor – OSHA
1205 Texas Avenue, Room 806
Lubbock, TX 79401

Re: *Johnny Taylor v. Union Pacific Railroad Company,* OSHA Case No. 6-0150-18-105

Dear Ms. Rivera:

Claimant Johnny Taylor contends UP failed to promote him and terminated his employment in retaliation for various alleged protected activities. In reality, Taylor was terminated for performance issues, insubordination, and indifference to performing the position responsibilities – all of which were detailed in the performance improvement plan (PIP) Taylor was placed on prior to his termination.

## FACTS

Taylor hired on with UP on September 12, 2007, into the Operations Management Training (OMT) program as an Engineering Associate working out of Livonia, Louisiana. Taylor completed OMT training, was promoted to Assistant Manager of Track Maintenance (MTM) in October of 2008 in Livonia, and was later transferred to Lufkin, Texas. In May of 2010, he was promoted to Manager of Track Maintenance (MTM) out of Odessa, Texas. In November 2012, he was transferred in the same position to Avondale, Louisiana and then on to Addis, Louisiana in 2014. Taylor was working out of Addis, Louisiana upon his termination from UP on February 27, 2018.[1]

Leading up to his termination, Taylor had received suggestions for improvement from his then-manager Mark Oldham during his 2017 mid-year review:

Something that is troubling to me is your attitude towards the management group of Union Pacific RR which you are a member of.

We should come to work every day with a positive attitude for the employees that we work with and the company that we work for. How we interact with our co-workers and our peers should have a positive result. If not it affects the attitudes of every employee around us. I need your positive engagement on our daily business activities. You have an open invitation to work through this with me. But

---

[1] Johnny Taylor HR Report



**UNION PACIFIC RAILROAD**
1400 Douglas Street, Stop 1580
Omaha, Nebraska 68179

**Sierra M. Poulson**
Associate General Attorney

P 402-544-1320
E smpoulson@up.com

UP-TAYLOR-000001

being more positive in your duties as a manager is something that has to be done for the whole team.[2]

Likewise, Taylor's year-end review in 2017 included feedback on performance issues that needed improvement.[3]

In early January 2018, Director of Maintenance of Way Jake Gilsdorf visited Louisiana to meet the managers and get familiar with the territory. He met Johnny Taylor for the first time and recalls a pleasant conversation. A week or so later, Gilsdorf had received a report of "bad ties" on a track that was taken out of service. Gilsdorf called the employee who reported it, who happened to be Taylor. As part of standard procedure[4], he asked Taylor to gather additional information on the defects and asked for a root cause as to why the ties were bad. Taylor became disrespectful on the call which ended abruptly when Taylor hung up on him (prior to the end of the conversation). Gilsdorf then had to call Manager of Track Projects (MTP) Phillip Hawkins to go inspect the track since Taylor refused.

On January 25, 2018, Gilsdorf met with Taylor, in person, to discuss needed behavioral improvements arising from Gilsdorf's interaction with Taylor and Taylor's interactions with other managers. Kenny Stuart and Phillip Hawkins were also present during this meeting. During this conversation, Taylor indicated he would not change any negative behaviors and was again argumentative. As a result, Taylor was placed onto paid administrative leave.[5]

On January 31, 2018, Gilsdorf and Superintendent Cliff Bowman delivered a Performance Improvement Plan (PIP) to Taylor.[6] He was not receptive to the conditions of the PIP. Instead, Taylor denied having any performance issues, refused to acknowledge the PIP discussion, and maintained he was not going to do anything any differently. Due to Taylor's refusal to engage in any aspect of the PIP, Taylor was placed back on paid administrative leave. During this meeting, Taylor indicated he had turned in a "whistleblower claim" recently. Throughout the interactions detailed above, Taylor repeatedly stated he was being retaliated against for taking a track out of service and each time, management explained their coaching and the PIP were strictly about his conduct, lack of respect, and insubordination. Union Pacific believes Taylor may have recorded this conversation.[7]

On February 6, 2018, Cynthia Kanabel, Human Resources Business Partner for the Southern Region, submitted a termination request for Taylor for "insubordination, indifference to perform position responsibilities and refusal to accept the conditions of his Performance Improvement Plan."[8] As part of the request, Kanabel uploaded Taylor's PIP and emails documenting managers' interactions with Taylor on January 25 and January 31. Upon submitting the request, Kanabel was made aware of an open ValuesLine claim being investigated by UP's Corporate Investigations Department (formerly referred to as the EEO Department). No decision was made regarding Taylor's termination until the investigation was completed.

In this most recent ValuesLine complaint, Taylor alleged that UP managers retaliated against him when they (1) requested Taylor to obtain additional information regarding a portion of track Taylor had reported as unsafe and (2) when they placed him on paid administrative leave.

---

[2] 2017 Performance Management for Johnny Taylor (mid-year and year-end review)
[3] 2017 Performance Management for Johnny Taylor (mid-year and year-end review)
[4] See Email from Lewis J. Gomez re: Southern Region V.T.I. Process dated 12/05/2017 and attachments. This email outlined the procedure Gilsdorf and his team were required to follow.
[5] Email dated 1/26/2018 regarding meeting.
[6] Performance Improvement Plan for Johnny Taylor 139431. The PIP was drafted by Taylor's supervisor, Kenny Stuart, but Stuart was on vacation at the time so Gilsdorf stepped in.
[7] Email dated 1/31/2018 from Gilsdorf regarding the PIP Initial Review meeting.
[8] Legal Assistance Request System (LARS) Request Summary #31148 – not produced due to attorney-client privilege.

2

UP-TAYLOR 000002

As a result of the investigation, Taylor's complaint was unsubstantiated. The investigator found that Taylor was insubordinate in refusing to provide additional information regarding the track and that it was normal and necessary for managers to contact him to return company-owned property after Taylor was placed on paid administrative leave. The investigator found neither action taken by UP violated UP's anti-retaliation or Whistleblower Policy and therefore, Taylor's complaint was unsubstantiated. Taylor received a letter notifying him of the closure of his internal complaint.

Senior leadership reviewing the termination request, upon the direction of UP legal counsel, requested a history of Taylor's internal complaints[9] based on the reference Taylor made in his initial PIP review meeting, along with the Executive Summary for Taylor's recent 2018 complaint received from UP's Corporate Investigations Team. Both were uploaded into the LARS system. On or about February 23, 2018, the request for termination was approved through normal channels[10]. A termination letter was issued by Mark Wheeland, Chief Engineer Maintenance of Way to Taylor on February 27, 2018[11], and LARS Request #31148 was closed on March 8, 2018.

### EEO/ValuesLine Complaints

Taylor submitted seven internal complaints via UP's ValuesLine starting in September 2016. The majority of the complaints alleged violations of UP's EEO Policy.[12] Those claims were unsubstantiated.[13] Taylor pursued similar allegations through a formal complaint to the Louisiana Commission on Human Rights (LCHR) in December of 2016.[14] The agency issued a 'no cause' finding on September 21, 2017. Now, in Taylor's current complaint before OSHA, he submits similar allegations, namely, that UP failed to promote him. In short, as fully presented in UP's position statement to the LCHR, Taylor was not qualified for the Director position (Director of Track Maintenance), because he had not yet held the position of Manager of Track Programs (MTP).[15] The successful candidates had followed the career path and had significantly more experience than Taylor.[16] Likewise, Taylor was not competitive because the other candidates for the position had **20 years** of experience at Union Pacific and far more applied work experience, including, most importantly, a successful history as an MTM and track supervisor – qualifications Taylor lacked.

In addition to the failure-to-promote claim, Taylor alleges that UP's recent employment decisions were in retaliation to Taylor's removal of tracks from service due to "unsafe conditions."[17] As discussed *supra*, it was during this call in January that Taylor hung up on Director MOW Gilsdorf. It was Taylor's disrespectful behavior on this call that precipitated the meeting on January 25th to discuss Taylor's attitude and treatment of his peers and management – the same issues brought up in his mid-year review the prior year. When Taylor again became argumentative and stated he would not change his negative behaviors, it was decided Taylor would be placed on administrative leave. To formally address Taylor's performance issues, he was offered a PIP, but Taylor refused to acknowledge it and stated he was unwilling to change. It was only after this that UP submitted a termination request and Taylor was terminated.

---

[9] Claims Summary – Taylor
[10] Pete Jeyaram, Director of the Corporate Investigations Team, and Jamie Herbert II, former AVP-HR.
[11] Taylor, J – Term 2-27-18 (Termination Letter)
[12] Claims Summary - Taylor
[13] UP can set up formal interviews with the individual investigators from our EEO Department at OSHA's convenience to discuss the result of their investigations and the reasoning behind their findings.
[14] UP Position Statement to LCHR.
[15] Generally, the career path to becoming a Director of Track Maintenance (DTM) at Union Pacific is as follows: Manager of Track Maintenance (MTM) → MTP (Manager of Track Programs) → DTM.
[16] See UP's Position Statement to LCHR dated 3-1-2017.
[17] Taylor made the same complaint to our ValuesLine which was investigated and closed as unsubstantiated. *See* Executive Summary.

UP-TAYLOR 000003

# LAW

To establish his *prima facie* case, Taylor must prove (i) he engaged in a protected activity; (ii) Union Pacific knew or suspected, actually or constructively, that he engaged in a protected activity; (iii) he suffered an adverse action; and (iv) the circumstances raise an inference that the protected activity was a contributing factor in the adverse action." *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 789 (8th Cir. 2014). If he makes this showing, UP "is nonetheless not liable if it demonstrates, by clear and convincing evidence, that it would have taken the same unfavorable personnel action in the absence of Taylor's protected activity." *Id* (citing § 42121(b)(2)(B)(ii)).

First, Taylor's claim fails on causation grounds. UP does not deny that Taylor called the ValuesLine starting in 2016. However, Taylor presents no evidence suggesting any of those reports played a role in UP's employment decisions in January and February of 2018. Likewise, he cannot explain away his disrespectful behavior and unwillingness to improve.

Throughout 2016 and 2017, Taylor submitted seven ValuesLine complaints and one government EEO charge, yet he was subject to no adverse action. Likewise, although our internal system is not capable of determining how many times a specific employee removed tracks from service, as a MTM Taylor was responsible for managing track inspectors. It is the track inspectors that most often remove tracks from service for varying reasons and as their supervisor, Taylor would also be in a position to take such action. Where an employee participated in a protected activity numerous times over an extended timeframe without discipline, this undercuts a finding of causation. *Dafoe v. BNSF Ry. Co.*, 2016 WL 778367, at *6 (D. Minn. Feb. 26, 2016) (granting summary judgment on this element).

Mere knowledge of Taylor's protected activity is not enough. Rather, Taylor must show intentional, discriminatory animus motivated UP's decisionmaking. *See Kuduk* ("the contributing factor that an employee must prove is ***intentional retaliation*** prompted by the employee engaging in protected activity."); *see also Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1190 n.1 (2011) (interpreting Kuduk, "[t]he FRSA whistleblower cause of action is an 'intentional tort,' the essence of which is 'discriminatory animus.'). Here, Gilsdorf had only business reasons to request more information from Taylor and instead of receiving a simple answer, Taylor became argumentative and disrespectful. Taylor's unacceptable behavior continued in a later meeting to address his behavior on the call and then in the PIP initial review meeting on January 31, 2018.

Relatedly, Taylor's disrespectful behavior is an unrelated, intervening event between the protected act and the adverse employment action that independently justified his termination. Where the protected activity "was completely unrelated" or "shared no nexus" with the "incident that led to" the adverse employment action, the subsequent incident constitutes "an intervening event that *independently* justified adverse disciplinary action." *Kuduk* (8th Cir. 2014) (emphasis in original) (granting summary judgment for railroad on this basis); *see also Gunderson v. BNSF Ry. Co.*, 2017 WL 942663 (8th Cir. March 10, 2017) (where FRSA-protected activities "were remote in time and disconnected from the disciplinary proceedings" by an intervening event, summary judgment was proper); *Dafoe v. BNSF Ry. Co.*, 2016 WL 778367, at *6 (D. Minn. Feb. 26, 2016) (same proposition).

Second, Union Pacific clearly and convincingly would have terminated Taylor's employment in the absence of any EEO complaints or other alleged protected activity – establishing the railroad's statutory affirmative defense. Taylor was placed on a PIP after refusing to accept or acknowledge any performance issues or unacceptable behavior. The PIP offered

UP-TAYLOR 000004

Taylor 3 months (until May 7, 2018) to improve his performance with assistance from senior management and Kanabel. However, Taylor refused to even consider the PIP and stated he would not change. Ultimately, it was Taylor's own reticence and indifference that led to his termination.

## CONCLUSION

UP's employment decisions were motivated solely by Taylor's unacceptable behavior and failure to improve or even acknowledge his PIP. For these reasons, Union Pacific respectfully requests OSHA's dismissal of this Complaint.

Very truly yours,

Sierra M. Poulson

Encls.

cc:     Robert Schmidt, counsel for Complainant  (w/ Enclosures, via regular mail)

5

UP-TAYLOR 000005

HR Reporting System

**Employee Personal Data**
**Name: JOHNNY TAYLOR**
**Empl Id: 0433859**

| Addr Eff Dt: | 01/21/2013 | Death Date: | |
| Home Addr: | 14047 WEST CREEK DRIVE - GONZALES LA 70737 | | |
| Mail Addr: | 14047 WEST CREEK DRIVE - GONZALES LA 70737 | | |
| Home Phone: | (225) 622-6014 | Cell Phone: | (402) 547-3124 |
| Marital Status: | | | |
| Original Hire Dt: | 09/12/2007 | Last Hire Dt: | 09/12/2007 |
| Adj Svc Dt: | 09/12/2007 | Years Of Svc: | 00 |
| Empl Status: | TERMINATED | Status Eff Dt: | 02/28/2018 |
| Exp Rtn Dt: | | | |
| Pos Eff Dt: | 11/01/2012 | Position Title: | ASST MGR TRACK MNTCE |
| Pos Number: | 00063472 | Job Code: | N71166 |
| Department: | 70: TRNSP SOUTHERN RGN | Division: | 99: UNDEFINED SVC UNIT |
| MOU: | 5305: Supt-Track Maintnc | Service Unit: | 08: LIVONIA TSU |
| Union: | 00: N/A | SBG: | |
| Work Location: | ADDIS, LA | | |
| Payroll: | 326 | Cost Center: | ED729 |
| Supv Name: | KENNETH W STUART | Supv Empl Id: | 0425583 |

**Emergency Contacts**

| Primary Contact | Contact Name | Contact Relation | Contact Phone |
|---|---|---|---|
| PRIMARY | Erica Taylor | SPOUSE | 6018504330 |

Report Generated on 07/16/18 14:14:04 by LADM431
Data copyright Union Pacific Railroad 2018

UP-TAYLOR 000006

HR Reporting System

**Work History**
**Name: JOHNNY TAYLOR**
**Empl Id: 0433859**

| EFF DATE | CHANGE TYPE | EMPL STATUS | JOB TYPE | POSITION TITLE | WORK LOCATION | UNION | DEPARTMENT | JOB CODE |
|---|---|---|---|---|---|---|---|---|
| 02/28/2018 | NA-Discharge | TERMINATED | NON-AGR | ASST MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 10/01/2017 | NA-Position Data Update | ACTIVE | NON-AGR | ASST MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 09/01/2017 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 05/01/2017 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 04/01/2017 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 01/12/2017 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 01/01/2017 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 12/10/2016 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 11/01/2016 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 10/31/2016 | NA-Position Change MRV | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 10/01/2016 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 07/08/2016 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 07/01/2016 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 06/01/2016 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 01/01/2016 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 10/31/2015 | NA-Position Change MRV | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 10/23/2015 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 10/01/2015 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 05/01/2015 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 04/27/2015 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 04/16/2015 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 02/02/2015 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 01/01/2015 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 12/01/2014 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 10/31/2014 | NA-Position Change MRV | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 10/01/2014 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 09/10/2014 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 09/02/2014 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 08/01/2014 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 06/06/2014 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 03/16/2014 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 02/01/2014 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |
| 01/15/2014 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ADDIS, LA | N/A | TRNSP SOUTHERN RGN | N71168 |

UP-TAYLOR 000007

HR Reporting System

| Date | Action | Status | | Position | Location | | Department | Number |
|---|---|---|---|---|---|---|---|---|
| 01/01/2014 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 11/16/2013 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/31/2013 | NA-Position Change MRV | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 09/17/2013 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 09/16/2013 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 08/14/2013 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 08/01/2013 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 07/18/2013 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 07/01/2013 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 06/11/2013 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 03/11/2013 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 03/04/2013 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 11/12/2012 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 11/01/2012 | NA-Lateral - Same Lvl | ACTIVE | NON-AGR | MGR TRACK MNTCE | AVONDALE, LA | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/31/2012 | NA-Position Change MRV | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/24/2012 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/20/2012 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/10/2012 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/01/2012 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 09/25/2012 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 08/01/2012 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 07/15/2012 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 07/01/2012 | NA-Position Data Update | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/31/2011 | NA-Position Change MRV | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/30/2011 | NA-Position Change MRV | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/31/2010 | NA-Position Change MRV | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/30/2010 | NA-Position Change MRV | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 05/01/2010 | NA Promotion | ACTIVE | NON-AGR | MGR TRACK MNTCE | ODESSA, TX | N/A | TRNSP SOUTHERN RGN | N71166 |
| 10/31/2009 | NA-Position Change MRV | ACTIVE | NON-AGR | ASST MGR TRACK MNTCE | LUFKIN, TX | N/A | Engineering | N40519 |
| 10/30/2009 | NA-Position Change MRV | ACTIVE | NON-AGR | ASST MGR TRACK MNTCE | LUFKIN, TX | N/A | Engineering | N40519 |
| 10/01/2009 | NA-Program Move | ACTIVE | NON-AGR | ASST MGR TRACK MNTCE | LUFKIN, TX | N/A | Engineering | N40519 |
| 04/01/2009 | NA-Program Move | ACTIVE | NON-AGR | ASST MGR TRACK MNTCE | LUFKIN, TX | N/A | Engineering | N40519 |
| 01/01/2009 | NA-Position Data Update | ACTIVE | NON-AGR | ASST MGR TRACK MNTCE | LIVONIA, LA | N/A | Engineering | N40519 |
| 10/31/2008 | NA-Position Change MRV | ACTIVE | NON-AGR | ASST MGR TRACK MNTCE | LIVONIA, LA | N/A | Engineering | N40519 |
| 10/30/2008 | NA-Position Change MRV | ACTIVE | NON-AGR | ASST MGR TRACK MNTCE | LIVONIA, LA | N/A | Engineering | N40519 |
| 10/23/2008 | NA-Position Change MRV | ACTIVE | NON-AGR | ASST MGR TRACK MNTCE | LIVONIA, LA | N/A | Engineering | N40519 |
| 10/01/2008 | NA Promotion | ACTIVE | NON-AGR | ASST MGR TRACK MNTCE | LIVONIA, LA | N/A | Engineering | N40519 |
| 04/01/2008 | NA-Program Move | ACTIVE | NON-AGR | ENGRNG ASSOC | LIVONIA, LA | N/A | Human Resources | N40331 |

UP-TAYLOR 000008

## HR Reporting System

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 11/01/2007 | NA-Position Data Update | ACTIVE | NON-AGR | ENGRNG ASSOC | LIVONIA, LA | N/A | Human Resources | N40331 |
| 10/31/2007 | NA-Position Change MRV | ACTIVE | NON-AGR | ENGRNG ASSOC | LIVONIA, LA | N/A | Human Resources | N40331 |
| 10/30/2007 | NA-Position Change MRV | ACTIVE | NON-AGR | ENGRNG ASSOC | LIVONIA, LA | N/A | Human Resources | N40331 |
| 09/12/2007 | NA-New Hire | ACTIVE | NON-AGR | ENGRNG ASSOC | LIVONIA, LA | N/A | Human Resources | N40331 |

Report Generated on 07/18/18 14:14:04 by LADM431
Data copyright Union Pacific Railroad 2018

UP-TAYLOR 000009

 BUILDING AMERICA®

# 2017 Performance Management for Johnny Taylor

## Introduction

## Goal Planning

Safety
### 1.1 Safety

Complete

Safety Goal is 0
E-Ramp Compliance 100% monthly, with coaching to improve,
Monthly Safety Meetings, Scheduled and Structured
One on Ones Completed by required date

### Manager Comments

Good job leading your team to an injury free year

### Employee Comments

E-ramp 100%

Have coaching for improvement

One - on - Ones 100% complete for the first half

Meet Monthly safety meeting requirement.

Customer Experience
### 2.1 REI

Complete

Reduce Track Caused Derailments by MTM
Track Inspector playbook at 100% and inspections compliant 100%
2 Track Inspection Evaluations per month/per Inspector. Covering Yards, Switches, Curves. with detailed comments.

### Manager Comments

Derailments in Avondale have to be reduced.  We will need to make a business case to eliminate some of the risk, but it is our job as leaders in UP to make sure we keep the trains on track.  Wide gauge derailments need to be eliminated.  You have a solid team, I have confidence that you will lead them to focus on the correct things to eliminate the risk.  Use the WIG to your advantage.

### Employee Comments

Have plan and place to reduce track caused derailments

Track inspector playbook 100%

100 % compliant with track inspector evaluations.

Do not agreed with final ruling on track cause derailments on Livonia Sub.

Customer Experience
## 2.2 Slow Order Management

<div style="float:right; border:1px solid black; padding:2px;">Complete</div>

Avoid 25 MPH Velocity Killers
Have plan to remove 25 MPH in (7) days
Address top 2 chronic slow order locations

**Manager Comments**

Since I have been here you have done a good job managing your slows.  You still have a couple that are getting old and you will need to keep focus on the older ones to remove them in a timely manner

**Employee Comments**

Have plans for top 2 chronic slow order locations

Innovation
## 4.1 Tamper Utilization

<div style="float:right; border:1px solid black; padding:2px;">In Progress</div>

Goal of 30% Production Rate
900' per production hour and 10,000 per tamper/per week
No unreported hours and removal of SFR tasks daily

**Manager Comments**

Just a little shy at 29.4% production rate for the year.  Watch your unreported hours, you have 16.  Excellent work utilizing tampers.

**Employee Comments**

Meeting goal

Innovation
## 4.2 Welding

<div style="float:right; border:1px solid black; padding:2px;">Complete</div>

30% Joint Reduction _ Goals by MTM Territory
Zero PMD Defects
CWR adjust completed by 05/01/2017
Daily Welding Activity by Welding Gang. Frog, Field Weld, Stick

**Manager Comments**

35% joint reduction year over year.  In 2018 I expect you to be under 10.  Make sure you are focusing on keeping your welders doing welding activities, weather permitting

**Employee Comments**

CWR adjust completed.

Maximized Franchise
## 5.1 Budget Management

<div style="float:right">Complete</div>

Percentage of Monthly Overtime per MTM
Monitor Allocations of Labor, Material and Contractor Expense
E-Procurements submitted by the 15th of the month
Monitor CAS bills

**Manager Comments**

$212,000 under budget for the year through Oct.

**Employee Comments**

On Plan

Engaged Team
## 6.1 FRA Relations and Compliance

<div style="float:right">Complete</div>

No Code 1 Violations
Quality Audits Performed on scheduled work and repairs completed
Track Inspectors verifying TI Defects for proper quality repairs
No overdoes

**Employee Comments**

ON plan

Other
## 7.1 Leadership

<div style="float:right">Complete</div>

Lead by Example
Follow SU Policies and Processes
Being Involved with Managing your Territory, know what is going on.
Conduct yourself in a Positive and Professional Manner

**Manager Comments**

You lead your team in a positive way from what I have seen so far.  Make sure that everyone above you knows and understands the good things that you are doing.  Don't be afraid to brag on yourself

**Employee Comments**

On Plan

## Core Competencies / Individual Development Plan (IDP)

## Employee Mid-Year Comments

Section Comments:

**Employee Comments**

On plan with budget, tamper production, and slow order reduction, do not agreed with final ruling on track cause derailments on Livonia Sub. I have good first half results.

## Mid-Year Comments by Other Reviewers

## Manager Mid-Year Feedback

Section Comments:

**Comments by Mark Thomas Oldham**

Johnny, your injury free days of 1223 is very impressive. You know that safety requires teaching and training. Also takes coaching to improve. With the coaching to improve we become a better team. You need to have scheduled, structured safety meetings with the TSC in attendance as much as possible.

You are at 4 track caused derailment for 2017 YTD, All are at switch locations in Avondale. Something that you should look at is adjusting your track inspectors playbook so they do not have as many switches to inspect at the end of the month. This will give them more time through the month to make quality switch inspections. Your areas of concerns are the switches in your yards and some of your chronic surface spots. You need to continue spending quality time with the TI's on the Livonia Sub . Continue to walk cluster tie location. Also Addis and Avondale Yards is another location to monitor closely.

Tamper production is on plan, great job. Your welding numbers are not. You need to start eliminating joints to remove the risk. Of all your production numbers you struggle with your welding requirements. Get your section gangs staffed correctly and have your welders welding.

Your budget is very good YTD. Once you have your headcount correct you will need to monitor your OT.

Most important thing is engage your employees, know your territory and work through issues to resolve them permanently.

Something that is troubling to me is your attitude towards the management group of Union Pacific RR which you are a member of. We should come to work every day with a positive attitude for the employees that we work with and the company that we work for. How we interact with our co-workers and our piers should have a positive result. If not it affects the attitudes of every employee around us.I need your positive engagement on our daily business activities. You have an open invitation to work through this with me. But being more positive in your duties as a manager is something that has to be done for the whole team.

## Employee Year-End Comments

Section Comments:

**Employee Comments**

Having a good year.

## Year-End Comments by Other Reviewers

## Manager Year-End Feedback

Section Comments:

**Manager Comments**

Next year will be all about derailment prevention.  You have a great employee safety record and are delivering on the other metrics.  Joint reduction and utilizing your welders for welding activities will be beneficial to you and your teams quality of life.

## Year-End Summary

**Year-end Performance Rating:**

3 - Good Performer

**UP-TAYLOR 000033**

## Acknowledgement/Signature

| | | |
|---|---|---|
| Employee: | Johnny Taylor | 12/27/2017 |
| | Excited by 2018, going to have a good year. | |
| Manager: | Kenneth W Stuart | 12/29/2017 |



**Fw: Southern Region V.T.I. process**
Jacob M. Gilsdorf   to: Sierra M. Poulson                    08/23/2018 06:26 AM

History          This message has been replied to.

Here is the Policy sent out last December from the region.

Jacob Gilsdorf
Sr. Director MOW Southern Region
24125 Old Aldine Westfield Rd.
Spring, TX 77373-9015
Office 281-350-7508
Cell 314-435-6934
----- Forwarded by Jacob M. Gilsdorf/UPC on 08/23/2018 06:26 AM -----

| From: | Phil H. Kreifels |
|---|---|
| To: | Jacob M. Gilsdorf/UPC@UP |
| Date: | 08/22/2018 08:16 PM |
| Subject: | Fw: Southern Region V.T.I. process |
| Sent by: | Phil H. Kreifels |

----- Forwarded by Phil H. Kreifels/UPC on 08/22/2018 08:16 PM -----



Lewis J. Gomez/UPC
12/05/2017 09:28 AM

To  SRMTM, SRTI

cc  Jason M. Tougas/UPC, Kenneth W. Stuart/UPC@UP, Travis
    D. Hatch/UPC@UP, Preston R. Lawless/UPC@UP, Bryan
    W. Shields/UPC, Mark A. Wheeland/UPC@UP, Phil H.
    Kreifels/UPC@UP, Jacob M. Gilsdorf/UPC@UP, srinspection
    team

Subject  Southern Region V.T.I. process

I have sent this out once but have some people saying
that they haven't seen it so here it is again .Following this process
is not an option but a requirement from the Chief Engineer
thanks



S.R. -V.T.I. Process.xlsx

L.J. " Buck " Gomez
Manager Special Projects
Southern Region UPRR
Office: 225-338-2803 ( VMX )
Cell:225-776-5996
esker fax 402-271-3082
ljgomez@up.com

UP-TAYLOR 000035

# Southern Region Vehicle Track Interaction (VTI) Process

Procedures for handling high VTI exceptions are located in Track Maintenance Field Handbook (TMFH) 2.7 to and including 2.7.3

**1-** High VTI exceptions follow all guidelines in Track Maintenance Field Handbook

**2-** Repeat high and all high bridge VTI exceptions will require the following

   A - Track measurements taken and recorded

   B - Pictures of exception area before and after repairs

   C - Engine number of trains watched over location if required as outlined in TMFH

   D - Root cause of VTI exception and what permanent repair consisted of to prevent
      exception from repeating

   E - Names of employees inspecting exception

   F - Slow order placed – speed and limits

   G - Screen shot of closure code and comments

**3-** Items from #2 sent to Buck Gomez, Mark Wheeland, Phil Kreifels and Jake Gilsdorf
    Buck will keep the file to ensure we are following SR VTI Process

UP-TAYLOR 000037

## SR VTI Inspection Form

| | | |
|---|---|---|
| Subdivision | _____ | Defect Type |
| Track | _____ | Bridge (Yes or No) |
| Mile Pole | _____ | 90 Day Repeat # |
| | | Date Recorded |

**Employees Inspecting**

Track _____

Bridge _____

**Track Measurements**

| | | | | | |
|---|---|---|---|---|---|
| Warp | _____ | Profile | LR _____ | RR _____ |
| Cross level | _____ | Alignment | LR _____ | RR _____ |

Corrugated Rail _____

Rail Joints _____    Condition of joints _____

In a switch, rail crossing or road crossing _____

Tangent (Yes or No) _____    Curve (Yes or No) _____

**Slow Order Placed**

Speed _____

Limits    MP From _____    MP To _____

**Root cause of VTI exception and what permanent repair consisted of to prevent exception from repeating**

_____

_____

_____

Add Pictures
Add screen shot of closure code and comments



**Johnny Taylor**

Ken R. Kuwamura Jr   to:   Robert S. McMillan, Roberta S.
Johnson, Cynthia A. Kanabel, Jacob M.
Gilsdorf     01/26/2018 10:21 AM

Scott,

I just met with Jake Gilsdorf and he has had some dealings with Johnny Taylor this week. Mr. Taylor has decided that he does not have to do anything that his manager or director tell him to do. He claims that he is being retaliated against every time that someone assigns a task. Jake has tried to work with him and even met with him one on one. Mr. Taylor continues to be disrespectful towards peers, managers and directors. He hangs up on them when he disagrees with instructions he is given and actually refused to do what he asked to do. He continues to dare them to fire him and states that he knows his rights and has an attorney. During Jakes face to face yesterday Mr. Taylor smiled at Jake sarcastically and kept refusing to do what he was being asked to do and daring Jake to fire him. Again he used the words "retaliation" and "whistle blower" and that he had an attorney.

Jake explained that he was not aware of the past and all he wanted to do was address the fact that Mr. Taylor's behavior on the phone was unprofessional and that hanging up on him would not be condoned. He also asked that Mr. Taylor improve his interactions with his peers and managers. Mr. Taylor again stated that he was not going to do anything different and again asked sarcastically if Jake was going to fire him.

The original request from Jake was a simple request for more information on a track defect from Mr. Taylor. He had turned in a report that just stated "bad ties". Jake was asking for a root cause of the issue as to why the ties were bad. Mr. Taylor stated that they reason that Jake was asking him for more detail was in retaliation to him taking a track out of service.

After meeting with Jake we agreed that Mr. Taylor was being disrespectful and belligerent. Mr. Taylor will be pulled out of service on Monday, Jan 29, 2018 on a 6.1 infraction. Let me know if you need anything from me let me know.

**Ken Kuwamura**
**Employee Relations Southern Region**
Union Pacific Railroad |24125 ALDINE WESTFIELD | SPRING, TX 77373
P:281-350-7482    mail to:KRKUWAMU@UP.COM
C: 402.618.8519
F 402-501-1837




Kuwamura_Ken.vcf

UP-TAYLOR 000039


**BUILDING AMERICA®**

# Performance Improvement Plan for Johnny Taylor

## Union Pacific

| Last Name | Taylor | First Name | Johnny |
|---|---|---|---|
| Employee ID | 0433859 | Title | Asst Mgr Track Mntce |
| Department | TRNSP SOUTHERN RGN 70 | Manager | Kenneth W Stuart |

## Review Information

| Originator | Kenneth W Stuart (0425583) |
|---|---|
| Review Period | 02/07/2018 - 05/07/2018 |
| Due Date | 05/07/2018 |

## Performance Improvement Plan (PIP)

### Coaches

Provides clear and consistent feeback, encouragement, and development guidance; corrects individuals' performance based on clearly communicated objectives.

| Performance Issue: | While team testing we came upon your track inspector. Track inspector took a long time to find profiles, admitted that he did not use them and he did not have all the tools required of his position. <br><br> Over the last 6 months the average coaching percentage of service unit peers is 21%. Your coaching rate is 11%. In addition, in the absence of team testing you report significantly fewer coaching opportunities. | Specific Performance Levels to be Met: | Coaching rate should be comparable when you are testing by yourself and when you are team testing. Also, your coaching rate needs to be similar to peers. You will need to set up a bi-weekly call with MTP and/or Sr MTM to go over your testing plan which includes where you are testing, why you are testing there, what you are testing for and what you observed. This call will also review team testing activities/results vs individual testing activities/results. <br><br> Coaching should reflect consistency throughout entire month and not only on team testing days. |
|---|---|---|---|

Timeframe:        05/01/2018

### Plans, Organizes and Prioritizes

Structures work with effective plans, identifies critical paths for the completion of activities, and manages resources based on value, importance, urgency and other organizational factors.

| Performance Issue: | Your welding gangs are not consistently performing the welding gang responsibilities. Your welders are doing section gang work as often as they perform welding activities. Service Unit expectation is that welders are doing welder activities. Your welders are also improperly reporting activities. Welders are not meeting weekly or monthly goals. <br><br> On 10/27/2017 you and I had a | Specific Performance Levels | Each of your welding gangs are required to eliminate 2 mainline or siding joints per week, totaling a minimum of 6 welds per week (CWR adjusts, DC Defects, pull aparts etc.) <br><br> Your two welding gangs are required to perform welding activities to meet weekly and monthly welding goals (I.e., frogs, switch points and joint elimination). You will be required to prepare a welding plan to be |
|---|---|---|---|

UP-TAYLOR 000040

| | | to be Met: | sent every Thursday. You will need to set up a time every Thursday to go over plan vs execution of welding activities of previous week. You will also need to review welding reporting daily and ensure that reporting is accurate and a true depiction of the work that was completed for the day. This report will be reviewed during our Thursday meeting. |
|---|---|---|---|
| | conversation about making sure you had proper production reporting for welding gangs.<br><br>On 11/02/2017 welding expectations were given to entire team on conference call<br><br>On 1/22/2018 You were again informed that welding gangs need to properly report their production | | |

Timeframe:  05/01/2018

## Builds Trust

Establishes open and trusting relationships , treats all individuals fairly and with respect; develops a climate where individuals are committed to sharing information.

| Performance Issue | On 1/22/2018 You were assigned task of getting more information on a high VTI near a bridge. You were disrespectful and insubordinate to Director MoW when you refused to gather any additional information as instructed by Director MoW.<br><br>On 1/10/2018 you were instructed by Sr MTM to provide current measurements on a track taken out of service. You provided derailment measurements from 6 weeks prior and did not perform current measurements as instructed by the SrMTM. | Specific Performance Levels to be Met: | When asked to provide information regarding any specific duties that are required of your position, you are expected to provide the required information by the date specified. |
|---|---|---|---|

Timeframe:  05/01/2018

## Teamwork

Works with others towards common goals, understands the responsibilities, activities, and ways to foster business relationships.

| Performance Issue: | On 1/25/2018 Sr MTM, Director MoW and MTP had a meeting with you to discuss your behavior. You indicated that you would not change any negative behaviors, and were argumentative.<br><br>On 1/10/2018 You called your SrMTM regarding a track that was taken out of service and refused to engage in a discussion about options to place the track back in service, ultimately hanging up prematurely and ending the call.<br><br>On several conference calls you have become argumentative when it comes to objectives with which you do not agree. | Specific Performance Levels to be Met | Your behavior on all conference calls and other forms of communication must be respectful and professional.<br><br>You must conduct yourself in a calm and professional manner when dealing with all UP employees or acting as an agent for Union Pacific<br><br>Your specific performance relative to the items referenced will be based on the following:<br><br>Feed back from managers and other employees in your work location relative to a change in your behavior. Specifically communicate with respect 100% of the time. Disrespectful behavior in the work environment with any employee, agreement or non-agreement, will not be tolerated. |
|---|---|---|---|

Timeframe

## Overall Comments

**Section Comments:**

**Manager comments**

Johnny Taylor is required to schedule an initial meeting with your SrMTM by 02/08/16, to present/discuss a prepared detailed action plan of how you plan to address the areas needing improvement noted above. Your SrMTM will review that action plan with you and give you constructive feedback and make recommendations if necessary.

After that initial meeting, you will be required to meet with your StMTM on a bi-weekly basis (once every two weeks) and provide clear and detailed status updates addressing the efforts you have made and your progress on the areas needing improvement noted above in this Performance Improvement Plan. Progress towards the 'specific performance levels to be met' as outlined in this PIP will be discussed. You will be responsible for setting up these required bi-weekly meetings.

Failure to show progress throughout the duration of this PIP and/or any future incidents involving performance related to this PIP will be cause for action, up to and including dismissal.

I am 100% committed to helping you achieve success. If there is anything that you need, don't hesitate to contact your SrMTM.

## Employee Acknowledgement

☐ I have read this Performance Improvement Plan.

Acknowledgement Date:



**Johnny Taylor meeting**
Jacob M. Gilsdorf    to: Mark A. Wheeland, Cynthia A. Kanabel         01/31/2018 01:42 PM
Cc: Roberta S. Johnson, Chad A. Wilbourn, Brian W. McGavock, Ken R.
Kuwamura Jr, Elizabeth A. Graham, Cliff L. Bowman

Today, myself and Superintendent Cliff Bowman met with Johnny Taylor at the Livonia headquarters building.

We started the conversation off with Mr. Taylor about his conduct as a manager for union pacific railroad. We discussed his recent conduct acting quarrelsome and disrespectful on the Engineering managers conference calls, including hanging up on his superiors.  We also discussed the recent situations of insubordination when Mr. Taylor was asked to obtain more details on a VTI location where the initial investigation was not detailed and no root cause was identified and including measurements of a switch that was asked for by his Sr. Manager that Mr Taylor refused to do.

We explained to Mr. Taylor that we wanted to help him be successful as a manager for union pacific and we would give him the tools to help improve his performance in the areas needing improvement with his conduct and leadership responsibility's as a manager.

Mr. Taylor said that he does not have any performance issues and he would not sign for acknowledgment or give a commitment that he will change his conduct as a manager for Union Pacific Railroad.  He said repeatedly that he is not and will not sign for acknowledgement for anything we have to offer to him.  We explained that we want him to be successful and give him a action plan to improve his performance and improve his conduct as a front line leader for the Engineering department.

Mr. Taylor was not willing to accept any help, advice or guidance that we have to offer him.  He recorded the meeting today, and was often referring back to a track that was taken out of service and this was retaliation, and or he is recording this for his attorney. He told us that he had turned us into the whistle blowers act, and he has done nothing wrong.  We tried to explain to Mr. Taylor that the meeting was based on his conduct as a manager, and has nothing to do with a track pulled from service.  Mr Taylor told Mr. Bowman, do what you have to do, because he isn't signing for acknowledgment and he is not receptive to any performance improvement plan that we could provide for him. He did look over the Performance improvement plan, and threw the paper back on the table, and said no, no, no, I am not going to sign that.  He was not going to do anything any different.

With the meeting not making any progress to addressing the performance issue of Conduct, found in General code of operating rules 1.6, we thanked Mr. Taylor for meeting us and we will be in touch with him.

Mr. Taylor is still on paid administrative leave at this time

# 1.6: Conduct

UP-TAYLOR 000043

Employees must not be:

1. Careless of the safety of themselves or others
2. Negligent
3. Insubordinate
4. Dishonest
5. Immoral
6. Quarrelsome
   or
7. Discourteous

Any act of hostility, misconduct, or willful disregard or negligence affecting the interes
cause for dismissal and must be reported. Indifference to duty or to the performance of

**Rule Updated Date**

April 7, 2010

Jacob Gilsdorf
Director of MOW Southern Region
24125 Aldine Westfield Rd.
Spring, TX 77373-9015
Office 281-350-7508
Cell 314-435-6934

UP-TAYLOR 000044

 **BUILDING AMERICA®**

February 27, 2018

**PERSONAL & CONFIDENTIAL**

<u>**VIA HAND DELIVERY**</u>

Johnny Taylor
14047 West Creek Drive
Gonzales, LA 70737

EID # 0433859

Dear Mr. Taylor:

Effective immediately, your employment relationship with Union Pacific Railroad
Company ("Union Pacific") is formally terminated. You are no longer required or
permitted to report to work, to access Union Pacific property, or to perform any job
duties on Union Pacific's behalf. You are disqualified from returning to any agreement
craft where you may retain seniority and will not be considered for any future
employment with the Union Pacific Railroad Company or any related companies.

You will be paid at your current salary rate through the date of record for your
termination, February 27, 2018. In addition, your non-agreement employee medical
coverage will continue through February 28, 2018, after which time you will be offered
the opportunity to purchase COBRA continuation coverage. Your eligible unused
vacation time and vacation time that was accrued this year for use next year will be paid
to you in a lump sum and included in your last paycheck.

Please make immediate arrangements with me, to return any remaining company
property. Additionally, you should make immediate arrangements to retrieve any
personal belongings you may have.

Very Truly Yours,

UNION PACIFIC RAILROAD
24125 Old Aldine Westfield Rd
Spring, TX 77373

Mark Wheeland
Chief Engineer M of W
Southern Region

P  281-350-7504
C  402-452-4212
F  UP-TAYLOR 000045

| Claim Date | Claim # | Description | Close out |
|---|---|---|---|
| 12/19/2016 | Gov't Charge | began my employment with Union Pacific Railroad on September 12, 2007, most recently as the Manager of Track Maintenance earning $95,000.00. In April 2016, I was denied a promotion to the Director of Track Maintenance. Bryan Shields was selected for the position even though I had more education and/or experience then him because Mr. Shields does not have a college degree. In August 2016, Mr. Shields left LSU and the position became opened. In September 2016, Mark Oldham was selected for the position. On September 19 2016, I filed an EEO Complaint with the company about not being promoted. On October 4, 2016, I filed an EEO Complaint for retaliation with the company and was placed on administrative leave after telling my Supervisor, Mark Oldham I could not finish work that day because earlier that morning I went to the doctor for treatment. Mr. Oldham told me that if I couldn't by call with him that day, I wasn't fit to do my job. On October 5, 2016, I was discharged but the company brought me back on October 21, 2016, because of what happened on October 4, 2016 when I went to the doctor. I have a hard copy of my EEO Complaints from the company saying, "they're conducting an investigation". The company employs over 500 employees. In October 2015, Mr. Shields has transferred to position of manager of track project. Bryan Shields has transferred to position though I had more education and/or experience.  No reason was given for these actions taken against me.<br>I believe I have been discriminated against because of my race, Black, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and discriminated against because of my age, 46 years, in violation of the Age Discrimination in Employment Act of 1967, in that, the positions I have applied for, the persons selected have been White and younger than me. | |
| 11/20/2016 | 952013 | On 10/04/2016, Johnny filed a report against Mark Oldham and since then Johnny has been targeted by Mark. When there is communication between Johnny and Mark, another manager is always present. Also, if Mark emails Johnny, other managers are copied on the emails. This has not occurred until the report to the Equal Employment Opportunity Commission was filed against Mark.<br>Johnny would like to report the incident so the company so he cannot be harassed anymore. | Not an EEO issue |
| 10/5/2016 | 951289 | I was place on Administrative Leave yesterday by the Southern Region. I foul a retaliation EEOC complaint about my unjust employment status. I have financial obligations too meet for my family. I need to know today the status of my employment with Union Pacific RR. | Closed 10/18/16- Unsubstantiated |
| 5/14/2016 | 949989 | Johnny was hired in 2007 with multiple credentials. He feels he is being discriminated against because of the time it is taking him to advance in the company. It is unknown who is responsible for this. Johnny is unsure of why he is not advancing when others who came in with him are. He has not been approached about any opportunities and those which he has applied for has been turned down for. Johnny has more experience and credentials than some who have surpassed him. He is an African American male over the age of 40 years of age and he believes that this is why he is being overlooked. Johnny would like an equal opportunity he would like this matter to be made known and handled accordingly, including but not limited to compensation for his losses. | Closed 10/11/16 - Unsubstantiated |

UP-TAYLOR 000047

| Claim Date | Claim # | Description | Close out |
|---|---|---|---|
| 11/2/2017 | 966733 | On 3/28/16, Johnny reports he filed an ethics report, number 125204249, about being cursed out by management for taking a track out of service because it had a design defect, and trains kept derailing.  On 11/1/17, at 8:25am, Johnny reports he and Kenneth Stuart were discussing the duties of his welders and Kenneth told him he wanted to plan his welders. Johnny told Kenneath that he could plan the welders, but that he had some specific defects he wanted welded, and if they weren't done before the due date, on 11/8/17, he would be taking the tracks out of service. Kenneath told Johnny "there would be consequences if he did that." Johnny explained company policy states he's allowed to take the tracks out of service if there are defects. Johnny has reported other instances of upper management telling him there will be consequences, even though he is following company rules, and this is a violation of the railroad safety act of 1989, better known as the whistleblower act. Johnny feels he is being retaliated against since he reported the previous incident, and was told he should not be threatened for following company policy and taking tracks out of service to repair defects. | Closed 12/20/2017 - Unsubstantiated |
| 9/18/2017 | 965190 | I FILED AN EEO COMPLAINT WITH THE FEDERAL GOVERNMENT EEOC. BECAUSE I FILE A COMPLAINT FEDERAL GOVERNMENT AND IS PARTICIPATING IN A FEDERAL INVESTIGATION, I AM BEING RETALIATED AGAINST WHEN IT COME TO PROMOTION. I AM CONSTANTLY OVERLOOKED FOR BEING PROMOTED TO MTP AND DTM JOBS. THE MOST RECENTLY ONE IS THE DTM JOB FOR THE LIVONIA SERVICE UNIT. ACCORDING TO UNION PACIFIC RR POLICY I SHOULD NOT BE RETALIATED AGAINST FOR PARTICIPATING IN A FEDERAL INVESTIGATION AND FOR FILING EEO COMPLAINTS WITH THE FEDERAL EEOC. | Closed 10/17/17 - Unsubstantiated |
| 5/28/2017 | 960384 | I FILE AN WHISTLE BLOWER VIOLATION IN ON MARCH 28, 2017 REPORT 125204249. LIVONIA SERVICE UNIT HAS BEEN FALSIFYING DOCUMENTS WHEN IT COME TO THE TRUE CAUSE OF DERAILMENTS. THE MOST RECENT CASE WAS ON MAY 28, 2017. THE DERAILMENT AT ON SWITCH 7 ON THE WEST END OF THE YARD WAS RECORDED AS TRACK CAUSE. THE EVIDENCE CLEARLY POINT TO TRAIN HANDLING WAS THE CAUSE OF THE DERAILMENT. WHEN I MADE IT TO THE SITE ALL EXCEPT 5 CARS WAS MOVE OUT OF TRACK. THE DTM DID THE INVESTIGATION AT THE DERAILMENT. THE DTM SAID THAT IT WAS NOT A TRACK CAUSED DERAILMENT. I HAVE FILE SEVERAL COMPLAINTS THROUGH THE EEO AND WHISTLE BLOWER. I AM BEEN RETALIATED AGAINST BY UPPER MANAGEMENT. NOW THEY ARE FALSIFYING SAFETY DOCUMENTS THAT ARE DIRECTLY AFFECTING MY SAFETY RECORD. | Closed 6/22/17 - Unsubstantiated |
| 3/28/2017 | 125204249 | MTM reports he took a track out of service for safety reasons due to a derailment earlier in the day. DTO got upset with him, cussing and screaming at him in front of coworkers. | Superintendent Bowman has spoken to both MTM Taylor and DTO Jaquess. The 2 employees had a disagreement on a critical lead being pulled out of service. DTO Jaquess was upset because there was not a diffisitive plan to get the track back in service. In the heat of the conversation, he cussed. Superintendent Bowman counseled Jaquess not to cuss |

UP-TAYLOR 000046

Report# 124140674

UNION PACIFIC

Page 1 of 2

## Values Line

### General Information

| | | |
|---|---|---|
| **Caller Name:** JOHNNY TAYLOR | **Client Name:** Union Pacific | **Report #:** 124140674 |
| **Type:** Employee | **Location #:** 7008 | **Priority:** 2 |
| **Title:** MGR TRACK MNTCE | **DBA:** Trnsp Southern Rgn | **Trans #:** 1 |
| **Phone:** (402)547-3124 | **Address:** 2173 Maringouin Rd | **Rpt Date:** 09/14/2016 |
| **Best Time to Call:** BETWEEN 6 AM AND 6 PM | **City,State,Zip:** Maringouin - LA 70757 | **Time:** 02:47AM |
| | **Country:** | **Origin:** Phone Call |
| **Email:** jtaylor1@up.com | **Phone:** | |

### Summary Information

**WHO:** Caller, JOHNNY TAYLOR, reported UNKNOWN UNKNOWN.

**WHAT:** Discrimination

**WHEN:** ONGOING SINCE 2007

**WHERE:** SERVICE UNIT

### Incident Description

**9/14/2016 2:47:00 AM - Original Call**

Johnny was hired in 2007 with multiple credentials. He feels he is being discriminated against because of the time it is taking him to advance in the company. It is unknown who is responsible for this. Johnny is unsure of why he is not advancing when others who came in with him are. He has not been approached about any opportunities and those which he has applied for he has been turned down for. Johnny has more experience and credentials than some who have surpassed him. He is an African American male over the age of 40 years of age and he believes that this is why he is being overlooked. Johnny would like an equal opportunity he would like this matter to be made known and handled accordingly, including but not limited to compensation for his losses.

How does the caller know about the incident?:    Alleged Victim

What documentation is available?:   dates

### Involved Parties

**Reported Individuals:**
**Name:** Unknown
**Title:** UNKNOWN
**Gender:** Unknown                                    **Ethnic Origin:** UNKNOWN
**Description:** n/a

**Management Notified:** YES
**Date:** 9/2016, EXACT DATE UNKNOW              **Phone:** (660)537-3984
**Name:** MARK OLDHAM
**Title:** DIRECTOR OF TRACK MAINTENANCE
**Action Taken:** unknown

**Involved/Aware Parties :**  NO

### Supplemental Information

How does the caller know about hotline:         Other

Interviewer Observations:

Additional Information
**Does this report involve a weapon on work premises?**      NO

Johnny Taylor
461-2017-00121

81 of 107

**PLF00757**

**PLEB00757**


EXHIBIT
Taylor
8
8-7-19

Union Pacific Railroad
1400 Douglas Street, Stop 310
Omaha, NE 68179

Ph. (866) 877-3362

Equal Employment Opportunity
Affirmative Action

October 11, 2016

Johnny Taylor
14047 West Creek Drive
Gonzales, Louisiana 70737

Dear Mr. Taylor:

Please be advised that the EEO Department has conducted an investigation into your complaint about possible discriminatory practices. This was completed jointly by our office and the senior management. The investigation has concluded and no EEO violation has been noted.

Also, as you know, Union Pacific prohibits retaliation against any employee who has made a good faith report of alleged EEO violations.  If you believe that you are being retaliated against because of your EEO complaint, please contact the EEO Hotline immediately at 1-866-877-3362.

Cordially,

*Leslie Walter*

Leslie M. Walter
EEO Compliance Manager
(402) 544-0216
lmwalter@up.com

www.up.com

BUILDING AMERICA®

Johnny Taylor
461-2017-00121

PLF00756

PLF00756

# Values Line
## General Information

| | | |
|---|---|---|
| Caller Name: JOHNNY TAYLOR | Client Name: Union Pacific | Report #: 124522825 |
| Type: Employee | Location #: 7008 | Priority: 2 |
| Title: MGR TRACK MNTCE | DBA: Trnsp Southern Rgn | Trans #: 1 |
| Phone: (402)547-3124 | Address: 2173 Maringouin Rd | Rpt Date: 11/20/2016 |
| Best Time to Call: ANYTIME | City,State,Zip: Maringouin - LA  70757 | Time: 07:32AM |
| | Country: | Origin: Phone Call |
| Email: jtaylor1@up.com | Phone: | |

## Summary Information

| | |
|---|---|
| WHO: | Caller, JOHNNY TAYLOR, reported MARK OLDHAM. |
| WHAT: | Employee Relations |
| WHEN: | ONGOING SINCE 10/04/2016 |
| WHERE: | AT THE WORKPLACE |

## Incident Description

**11/20/2016 7:32:00 AM - Original Call**

On 10/04/2016, Johnny filed a report against Mark Oldham and since then Johnny has been targeted by Mark. When there is communication between Johnny and Mark, another manager is always present. Also, if Mark emails Johnny, other managers are copied on the emails. This has not occurred until the report to the Equal Employment Opportunity Commission was filed against Mark.

Johnny would like to report the incident to the company so he cannot be harassed anymore.

How does the caller know about the incident?:     Alleged Victim

What documentation is available?:  emails

## Involved Parties

Reported Individuals:
  Name: MARK OLDHAM
  Title: DIRECTOR

Management Notified: NO

Involved/Aware Parties :  NO

## Supplemental Information

How does the caller know about hotline:          Other

Interviewer Observations:

Additional Information

| | |
|---|---|
| Does this report involve a weapon on work premises? | NO |
| Does your issue involve a FMLA concern? | NO |
| Would you please provide your employee ID number? | YES |
| Please provide your employee ID number. | 0433859 |
| VDN Number | 2204593 |

Johnny Taylor
461-2017-00121

83 of 107

PLF00758

PPEB00758

# Values Line

## General Information

| | | |
|---|---|---|
| **Caller Name:** JOHNNY TAYLOR | **Client Name:** Union Pacific | **Report #:** 126405759 |
| **Type:** Employee | **Location #:** 7008 | **Priority:** 2 |
| **Title:** ASST MGR TRACK MNTCE | **DBA:** Trnsp Southern Rgn | **Trans #:** 1 |
| **Phone:** (402)547-3124 | **Address:** 2173 Maringouin Rd | **Rpt Date:** 11/02/2017 |
| **Best Time to Call:** FROM 7AM - 4PM | **City,State,Zip:** Maringouin - LA 70757 | **Time:** 09:27AM |
| | **Country:** | **Origin:** Phone Call |
| **Email:** jtaylor1@up.com | **Phone:** | |

## Summary Information

| | |
|---|---|
| **WHO:** | Caller, JOHNNY TAYLOR, reported KENNEATH STUART. |
| **WHAT:** | Retaliation of Whistleblowers |
| **WHEN:** | ON 3/28/16 |
| **WHERE:** | WORK |

## Incident Description

**11/2/2017 9:27:00 AM - Original Call**

On 3/28/16, Johnny reports he filed an ethics report, number 125204249, about being cursed out by management for taking a track out of service because it had a design defect, and trains kept derailing.

On 11/2/17, at 8:25am, Johnny reports he and Kenneath Stuart were discussing the duties of his welders and Kenneath told him he wanted to plan his welders. Johnny told Kenneath that he could plan the welders, but that he had some specific defects he wanted welded, and if they weren't done before the due date, on 11/8/17, he would be taking the tracks out of service.

Kenneath told Johnny "there would be consequences if he did that." Johnny explained company policy states he's allowed to take the tracks out of service if there are defects. Johnny has reported other instances of upper management telling him there will be consequences, even though he is following company rules, and this is a violation of the railroad safety act of 1989, better known as the whistleblower act.

Johnny feels he is being retaliated against since he reported the previous incident, and was told he should not be threatened for following company policy and taking tracks out of service to repair defects.

**How does the caller know about the incident?**      Alleged Victim

**What documentation is available?:**   Previous ethics report

## Involved Parties

**Reported Individuals:**
     **Name:** KENNEATH STUART
     **Title:** SENIOR MANAGER

**Management Notified: NO**

**Involved/Aware Parties :**   NO

## Supplemental Information

**How does the caller know about hotline:**      Other

**Interviewer Observations:**

**Additional Information**
     **Does this report involve a weapon on work premises?**     NO

UP-TAYLOR 000174

| Report# 126405759 | UNION PACIFIC | Page 2 of 2 |
|---|---|---|

| | |
|---|---|
| Does your issue involve a FMLA concern? | NO |
| Would you please provide your employee ID number? | YES |
| Please provide your employee ID number. | 0433859 |
| VDN Number | 2202214 |

## Client Instructions

The caller has provided his/her name and/or contact information indicating an interest in discussing this matter with a company representative.

Conditions:
The information contained in this report was provided by a third party source. The Network, Inc. does not verify the accuracy or the completeness of the information contained in this report, and therefore, cannot guarantee its accuracy or completeness.

If you have questions, concerns or updates such as escalation and/or dissemination instructions relative to our service or this incident report please contact us at "clientcommunication@tnwinc.com."

UP-TAYLOR 000175

# Values Line
## General Information

| | | |
|---|---|---|
| **Caller Name:** JOHNNY TAYLOR | **Client Name:** Union Pacific | **Report #:** 125204249 |
| **Type:** Employee | **Location #:** 7008 | **Priority:** 2 |
| **Title:** MGR TRACK MNTCE | **DBA:** Trnsp Southern Rgn | **Trans #:** 1 |
| **Phone:** (402)547-3124 | **Address:** 2173 Maringouin Rd | **Rpt Date:** 03/28/2017 |
| **Best Time to Call:** ANYTIME | **City,State,Zip:** Maringouin - LA 70757 | **Time:** 03:09PM |
| | **Country:** | **Origin:** Phone Call |
| **Email:** jtaylor1@up.com | **Phone:** | |

## Summary Information

| | |
|---|---|
| **WHO:** | Caller, JOHNNY TAYLOR, reported DANIEL JACQUES. |
| **WHAT:** | Employee Relations |
| **WHEN:** | MARCH 28 2017 |
| **WHERE:** | ADDIS DEPOT - 4366 MAIN STREET, ADDIS, LA |

## Incident Description

**3/28/2017 3:09:00 PM - Original Call**

On March 28 2017, Johnny decided to take a track out of service because it was unsafe and there had been derailment earlier in the day. There have been ongoing problems with this track including three derailments over the past few years, that Johnny knows of. There had been a major project to correct this hazard but it was cancelled due to lack of funds.

Daniel Jacques got upset that Johnny closed the track and began cussing and screaming at him in front of coworkers. Jimmy and Nicholas both witnessed Daniel cussing at Johnny and also can attest to the unsafe conditions of the track.

Daniel has shown a pattern of disrespectful speech directed toward Johnny in the past.

Johnny was just doing his job and exercising his rightful authority to prevent accidents. The track is currently out of service and does not pose an immediate threat as long as it stays closed.

Johnny wants Daniel to speak to him with respect and to respect his decisions as track manager.

**How does the caller know about the incident?:** Alleged Victim

**What documentation is available?:** none

## Involved Parties

**Reported Individuals:**
**Name:** DANIEL JACQUES
**Title:** DIRECTOR OF TRAINS OPERATIONS

**Management Notified: NO**

**Involved/Aware Parties : YES**
**Name:** JIMMY COUGET
**Title:** MANAGER OF YARD OPERATIONS
**Role:** Witness

**Name:** NICHOLAS ISSAC
**Title:** TRACK INSPECTOR

## Supplemental Information

**How does the caller know about hotline:** Intranet

Report# 125204249                    **UNION PACIFIC**                    Page 2 of 2

| Interviewer Observations: |  |
|---|---|

**Additional Information**

| | |
|---|---|
| Does this report involve a weapon on work premises? | NO |
| Does your issue involve a FMLA concern? | NO |
| Would you please provide your employee ID number? | YES |
| Please provide your employee ID number. | 0433859 |
| VDN Number | 2202214 |

## Client Instructions

The caller has provided his/her name and/or contact information indicating an interest in discussing this matter with a company representative.

Conditions:
The information contained in this report was provided by a third party source. The Network, Inc. does not verify the accuracy or the completeness of the information contained in this report, and therefore, cannot guarantee its accuracy or completeness.

If you have questions, concerns or updates such as escalation and/or dissemination instructions relative to our service or this incident report please contact us at "clientcommunication@tnwinc.com."

UP-TAYLOR 000170

**Caller Information**

| Anonymous Caller: | N | Emp ID: | 0433859 |
|---|---|---|---|
| First Name: | Johnny | Last Name: | Taylor |
| Type: | | Job Title: | Mgr Track Mntce |
| Status: | Non-Agreement | Gender: | Male |
| Manager First Name: | Mark | Manager Last Name: | Oldham |
| Manager Status: | Non-Agreement | Manager Title: | Dir Track Mntce |

**Reported**

| Name | Title | Department | Service Unit | Relation Type | Agreement Status | Manager Name | Manager Title |
|---|---|---|---|---|---|---|---|

**Case Information**

| Report ID: | UPVL0606170536 | Reviewed: | Yes |
|---|---|---|---|
| Status: | New | Report Date Time: | 06/06/2017   05:36 AM |
| Case Type: | Retaliation of Whistleblowers | Case Class: | Retaliation |
| Case SubType: | | Relationship Type: | |
| Initial Severity: | First-Tier | Final Severity: | |
| Determination: | | Outcome: | |
| When Happened: | May 28, 2017 | Where Happened: | Avondale, La |
| Available Documentation: | None | Origin: | Webapp |
| Due Date: | 07/06/2017 | Closed Date Time: | |
| UPC Major Dept: | Operating | Department: | TRNSP SOUTHERN RGN |
| MOU/Shop: | | Service Unit: | |

**Case Description:**
I FILE AN WHISTLE BLOWER VIOLATION IN ON MARCH 28, 2017 REPORT 125204249. LIVONIA SERVICE UNIT HAS BEEN FALSIFYING DOCUMENTS WHEN IT COME TO THE TRUE CAUSE OF DERAILMENTS. THE MOST RECENT CASE WAS ON MAY 28, 2017. THE DERAILMENT AT ON SWITCH 7 ON THE WEST END OF THE YARD WAS RECORDED AS TRACK CAUSE. THE EVIDENCE CLEARLY POINT TO TRAIN HANDLING WAS THE CAUSE OF THE DERAILMENT. WHEN I MADE IT TO THE SITE ALL EXCEPT 5 CARS WAS MOVE OUT OF TRACK. THE DTM DID THE INVESTIGATION AT THE DERAILMENT. THE DTM SAID THAT IT WAS NOT A TRACK CAUSED DERAILMENT. I HAVE FILE SEVERAL COMPLAINTS THROUGH THE EEO AND WHISTLE BLOWER. I AM

UP-TAYLOR 000171

BEEN RETALIATED AGAINST BY UPPER MANAGEMENT. NOW THEY ARE FALSIFYING SAFETY DOCUMENTS THAT ARE DIRECTLY AFFECTING MY SAFETY RECORD.

**Resolution Notes:**

No Other Involved Parties Found

### Case Team

| User | Role |
|------|------|
| Cullen,Janet | Case Admin |
| Jeyaram,Pete | Case Admin |
| Poulson,Sierra | Case Manager |
| Schimke,Lance | Case Admin |
| Wallace,Mary | Case Admin |

### Notes

| Posted By | Posted On | Description |
|-----------|-----------|-------------|

UP-TAYLOR 000172

## To Do

| Posted By | Posted On | Assigned To | Due Date | Description |
|-----------|-----------|-------------|----------|-------------|

Page 3 of 3    06/07/17 10:35 AM
PRIVILEGED AND CONFIDENTIAL - FOR INTERNAL USE ONLY
NOT FOR DISTRIBUTION

UP-TAYLOR 000173

 **BUILDING AMERICA®**

December 20, 2017

Johnny Taylor
14047 West Creek Drive
Gonzales, LA, 70737

Dear Johnny Taylor:

Please be advised that the EEO Department has conducted an investigation into your complaint involving a potential EEO violation. We appreciate your time and attention to this matter. The investigation has concluded and appropriate action has been taken.

Also, as you know, Union Pacific prohibits retaliation against any employee who has made a good faith report of alleged EEO violations. If you believe that you are being retaliated against because of this EEO complaint, please contact the EEO Hotline immediately at 1-866-877-3362.

Cordially,

*Kathleen A. Nicolini*

Kathleen A. Nicolini, MBA, SPHR, SHRM - SCP
Manager, EEO & AA
(402) 544-8071
kanicoli@up.com

UNION PACIFIC RAILROAD                    Equal Employment Opportunity
PLF00792                                                        PLEB00792

Report# 126808783

# Values Line
## General Information

| | | |
|---|---|---|
| **Caller Name:** JOHNNY TAYLOR | **Client Name:** Union Pacific | **Report #:** 126808783 |
| **Type:** Employee | **Location #:** 7008 | **Priority:** 2 |
| **Title:** ASST MGR TRACK MNTCE | **DBA:** Trnsp Southern Rgn | **Trans #:** 2 |
| **Phone:** (402)547-3124 | **Address:** 2173 Maringouin Rd | **Rpt Date:** 01/22/2018 |
| **Best Time to Call:** AFTERNOONS | **City,State,Zip:** Maringouin - LA 70757 | **Time:** 07:34PM |
| | **Country:** | **Origin:** Phone Call |
| **Email:** jtaylor1@up.com | **Phone:** | |

## Summary Information

| | |
|---|---|
| **WHO:** | Caller, JOHNNY TAYLOR, reported KENNETH STUART. |
| **WHAT:** | Employee Relations |
| **WHEN:** | ONGOING SINCE 11/24/2017 |
| **WHERE:** | LIVONIA SERVICE UNIT ENGINEERING DEPARTMENT |

## Incident Description

**1/23/2018 8:19:04 AM - Caller Call Back**
Caller called back and was informed that there was no new info.

Johnny called back to add Jacob Gilsdore's name to the report because he is being harassed by him.

On 01/22/2018, Johnny was following procedures and doing his job and Jacob sent him a bunch of emails inquiring about the "slow-orders" that he placed. However, Johnny was simply following proper company procedures. Johnny felt harassed by Jacob for doing what he was supposed to do.

The company is on a Federal Rail Administration (FRA) compliance order for not submitting slow-orders and repairing the tracks. However, every time the employees submit slow-orders, they are harassed by management.

Johnny would like this persecution and harassment to stop and to be able to do his job as it should be done.

**1/22/2018 7:34:00 PM - Original Call**
On 11/24/2017, Johnny took some measurements and found a federal railroad administration (FRA) defect in track 16. Johnny sent an email about this matter to Kenneth Stuart. Kenneth noted there was no funding to get the defect in track 16 repaired.

On 11/28/2017, Johnny spoke to Nick about track 16. Nick told Johnny that he was obligated to take the track out of service if it was not repaired within 30 days. Nick also told Johnny to let an engineer look at the track.

On 1/4/2018, Charles inspected track 16 and confirmed the defect.

On 1/10/2018, Johnny took track 16 out of service. Since that time, Kenneth has been harassing him by asking him details of why he took the track out of service.

Kenneth now comes to Johnny consistently asking him to put track 16 back in service. Johnny continues to tell Kenneth track 16 will be back in service after it is repaired. Kenneth keeps on saying that there is no funding for the repair. Johnny told Kenneth, "Once you get funding for the repair, let me know."

Johnny called Mark about his concern and left Mark a voice message.

On 1/25/2018, Johnny is slated to meet with Kenneth again about track 16.

Johnny wants the harassment from Kenneth to cease. Johnny is asking for an investigation into this concern.

**How does the caller know about the incident?:**     Alleged Victim

**What documentation is available?:**  Emails

UP-TAYLOR 000176

Report# 126808783                       UNION PACIFIC                    Page 2 of 2

## Involved Parties

**Reported Individuals:**
    **Name:** KENNETH STUART
    **Title:** SENIOR MANAGER OF TRACK MAINTENANCE

**Management Notified:** YES
    **Date:** 1/22/2018                      **Phone:** (281)350-7504
    **Name:** MARK WHEELAND
    **Title:** CHIEF ENGINEER, SOUTHERN REGION
**Action Taken:** Johnny left a voice message for Mark.

**Involved/Aware Parties :** YES
    **Name:** NICK ROPPOLLO
    **Title:** FRA INSPECTOR
    **Role:** Co-Worker

    **Name:** CHARLES POWER
    **Title:** ENGINEER
    **Role:** Witness

## Supplemental Information

How does the caller know about hotline:      Intranet

**Interviewer Observations:**

**Additional Information**
| | |
|---|---|
| Does this report involve a weapon on work premises? | NO |
| Does your issue involve a FMLA concern? | NO |
| Would you please provide your employee ID number? | YES |
| Please provide your employee ID number. | 0433859 |
| VDN Number | 2202214 |

## Client Instructions

The caller has provided his/her name and/or contact information indicating an interest in discussing this matter with a company representative.
Conditions:
The information contained in this report was provided by a third party source. The Network, Inc. does not verify the accuracy or the completeness of the information contained in this report, and therefore, cannot guarantee its accuracy or completeness.
If you have questions, concerns or updates such as escalation and/or dissemination instructions relative to our service or this incident report please contact us at "clientcommunication@tnwinc.com."

UP-TAYLOR 000177

UNION PACIFIC

# Values Line
## General Information

| | | |
|---|---|---|
| **Caller Name:** JOHNNY TAYLOR | **Client Name:** Union Pacific | **Report #:** 126853909 |
| **Type:** Employee | **Location #:** 7008 | **Priority:** 2 |
| **Title:** ASST MGR TRACK MNTCE | **DBA:** Trnsp Southern Rgn | **Trans #:** 1 |
| **Phone:** (601)850-4321 | **Address:** 2173 Maringouin Rd | **Rpt Date:** 01/30/2018 |
| **Best Time to Call:** 8 AM TO 5 PM | **City,State,Zip:** Maringouin - LA 70757 | **Time:** 08:06PM |
| | **Country:** | **Origin:** Phone Call |
| **Email:** jtaylor1@up.com | **Phone:** | |

## Summary Information

| | |
|---|---|
| **WHO:** | Caller, JOHNNY TAYLOR, reported JACOB GILSDORF and KENNETH STUART and PHILLIP HAWKINS. |
| **WHAT:** | Discrimination |
| **WHEN:** | SINCE 1/10/2018 |
| **WHERE:** | INSIDE OF JOHNNY'S HOME, LOCATION WITHHELD |

## Incident Description

**1/30/2018 6:06:00 PM - Original Call**

On 1/10/2018, Johnny took a track out of service, for safety reasons. Johnny got chastised by Jacob Gilsdorf, Kenneth Stuart, and Phillip Hawkins. Johnny called the hotline on 1/22/2018 to report this, report number 126808783. Johnny would like the investigator to read that report so that he/she can understand what has been going on.

On 1/29/2018, Johnny called out because he was sick. Erica took Johnny out to get medication. On his way to get his medication, Johnny saw Kenneth and Phillip at Johnny's front door, ringing his bell. Johnny returned home and called Kenneth to ask what he was doing at Johnny's house. Kenneth and Phillip returned to talk to Johnny. They came into his home. Johnny and Erica asked what they needed. Kenneth and Phillip told Johnny that he was going on administrative leave, but didn't say why. Johnny asked what it meant and they didn't know what it meant. Kenneth and Phillip said that they were told to tell Johnny about it. Kenneth and Phillip took Johnny's computer, work phone and work truck. That upset Erica, and she was crying. Johnny feels that it was inappropriate of them to come into his house to tell Johnny that he was on administrative leave.

Johnny feels discriminated against because he knows of no one that went through what he did. Johnny feels that it is because he is African-American that Kenneth and Phillip did that to him in front of his wife. Johnny is the main provider of the household. Phillip is African-American. However, Kenneth and Jacob, who are the highest ranking managers are both Caucasian. Johnny feels that if he had been Caucasian, he wouldn't have been treated that way. Phillip and Kenneth didn't have to come all the way to Johnny's house and do that to him in front of his wife. If Johnny was on administrative leave, he should have been given an explanation. It's not the first time that Johnny has been placed on administrative leave, but he was never given one inside his home.

Johnny wants the company to know that he takes care of Erica financially, and that she had brain surgery two years ago. Erica had a stroke back then. Doing that in front of Erica was inhumane, because Erica has a medical condition. Johnny would like Phillip, Kenneth and Jacob to be disciplined. Johnny would have never done that to anyone.

**How does the caller know about the incident?:**    Alleged Victim

**What documentation is available?:**  report number 126808783

## Involved Parties

**Reported Individuals:**
**Name:** PHILLIP HAWKINS
**Title:** MANAGER OF TRACK PROJECTS

**Name:** KENNETH STUART
**Title:** SENIOR MANAGER TRACK MAINTENANCE

UP-TAYLOR 000178

| | |
|---|---|
| **Name:** | JACOB GILSDORF |
| **Title:** | GENERAL DIRECTOR |

**Management Notified: NO**

**Involved/Aware Parties : YES**

| | |
|---|---|
| **Name:** | ERICA TAYLOR |
| **Title:** | JOHNNY TAYLOR'S WIFE |
| **Role:** | Alleged Victim |

## Supplemental Information

**How does the caller know about hotline:**          Intranet

**Interviewer Observations:**

**Additional Information**

| | |
|---|---|
| Does this report involve a weapon on work premises? | NO |
| Does your issue involve a FMLA concern? | NO |
| Would you please provide your employee ID number? | YES |
| Please provide your employee ID number. | 0433859 |
| VDN Number | 2204593 |

## Client Instructions

The caller has provided his/her name and/or contact information indicating an interest in discussing this matter with a company representative.

Conditions:
The information contained in this report was provided by a third party source. The Network, Inc. does not verify the accuracy or the completeness of the information contained in this report, and therefore, cannot guarantee its accuracy or completeness.

If you have questions, concerns or updates such as escalation and/or dissemination instructions relative to our service or this incident report please contact us at "clientcommunication@tnwinc.com."

UP-TAYLOR 000179

Union Pacific Railroad
1400 Douglas Street, Stop 310
Omaha, NE 68179
Ph: (866) 877-3362

Equal Employment Opportunity
Affirmative Action

3/23/2018

Johnny Taylor
14047 West Creek Drive
Gonzales, LA 70737

Dear Mr. Taylor:

Please be advised that the EEO Department has conducted an investigation into your complaint about possible discriminatory practices. This was completed jointly by our office and the senior management. The investigation has concluded and no EEO violation has been noted.

Also, as you know, Union Pacific prohibits retaliation against any employee who has made a good faith report of alleged EEO violations. If you believe that you are being retaliated against because of your EEO complaint, please contact the EEO Hotline immediately at 1-866-877-3362.

Cordially,

Scott McMillan
Manager, EEO Compliance
(402) 544-8482
rsmcmill@up.com



**BUILDING AMERICA**

To: Pete Jeyaram, Director EEO and AA

From: Scott McMillan, Manager of EEO Compliance

RE: Tier 1 and Tier 2 Taylor Complaint (PL numbers 970105 and 969835)

Date: 2/9/2018
_____

<u>Issue:</u>

Did a manager violate company policy when he requested complainant obtain additional information regarding a portion of track complainant reported as unsafe and did two company managers violate company policy when they went to complainant's house to put him on administration leave and confiscate his company truck and cell phone?

<u>Applicable Rules & Policies:</u>

Union Pacific's Equal Employment Opportunity/Affirmative Action Policy states:

Union Pacific strictly prohibits any discrimination or harassment based on a person's race, color, sex, national origin, ancestry, age, disability, religion, military and veteran status, sexual orientation, gender identity, gender expression, genetic information, pregnancy, or any other ground prohibited by law ("protected status"). This policy covers all aspects of employment, including hiring, promotions, terminations, pay, and the work environment.

There will be no unlawful retaliation against any employee for making a good faith report of alleged violations of our Company's policy against discrimination, harassment, and offensive behavior; opposing any practice believed in good faith to be unlawfully discriminatory; or participating in an internal or government investigation of possible discrimination. Any employee who engages in prohibited retaliation will receive appropriate discipline, up to and including termination.

<u>Facts:</u>

On January 29, 2018 Kenneth Stuart, Senior Manager of Track Maintenance and Jacob Gilsdorf, Director Maintenance of Way traveled to complainant's house to place him on administrative leave and confiscate complainant's work phone, computer and company truck.

Superintendent Cliff Bowman and Jacob Gilsdorf met with complainant at the Livonia Service Unit location on January 31, 2018 to discuss complainant's recent negative actions including hanging up on management staff, disrespectful behavior when

speaking with Engineering Managers, and committing insubordination when he refused to examine the track he pulled from service.  The instruction came from a Director and it was both job related and necessary for Union Pacific to gather in order to develop a plan to repair that section of track.

## Analysis:

I find that Complainant was insubordinate, which is a very serious rule violation. Regarding the action taken by two managers when they drove to complainant's house to confiscate Union Pacific property (truck, cell phone), that action was not unprecedented and was a necessary action to obtain  company owned property from the Complainant.

## Conclusion:

In this case, given the specific facts of this investigation, neither action taken by Union Pacific violated company policy and no retaliation occurred..  Therefore this complaint is unsubstantiated..

**Scott McMillan, Senior EEO Analyst**

† ² CORRECTED (if checked)

| PAYER'S name, street address, city, state and ZIP code | | 1 Unemployment compensation | OMB No. 1545-0120 | Certain Government Payments |
|---|---|---|---|---|
| U.S. Railroad Retirement Board<br>Sickness and Unemployment Benefits Section<br>844 North Rush Street<br>Chicago, IL 60611-2092 | | $13053.82 | **2018** | |
| | | 2 State or local income tax refunds, credits, or offsets | Form 1099-G | |
| PAYER'S Federal identification number<br>36-3553030 | Recipient's identifying number<br>***-**-8339 | 3 Box 2 amount is for tax year | 4 Federal income tax withheld | **Copy B**<br>For<br>Recipient |
| RECIPIENT'S name, street address, city, state and ZIP code<br>IIıııIIIııIıııIıIIIııIıııIIııIIIıI<br>J TAYLOR<br>14047 WEST CREEK DR<br>GONZALES LA 70737-7156 | | | 6 Taxable grants | |
| | | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. | | |

Form **1099-G**             (Keep for your records.) Department of the Treasury-Internal Revenue Service

### Instructions to Recipient

**Box 1** - Shows the total unemployment compensation paid to you this year by the Railroad Retirement Board. This amount is taxable income to you. The gross amount shown does not reflect the repayment of any unemployment compensation during the tax year. You may report repayments on your tax return. For more information, see the Instructions for your Federal income tax return. If you expect to receive these benefits in the future, you can request the payer to withhold Federal income tax from each payment. Or you can make estimated tax payments, using **Form 1040-ES**, Estimated Tax for Individuals.

**Box 2** - Shows refunds, credits or offset of State or local income tax you received. If there is an entry in this box, it may be taxable to you if you deducted the tax paid as an itemized deduction on your Federal income tax return. See the Instructions for Forms 1040 or 1040A for more information.

**Box 3** - This identifies the tax year of the refund shown in Box 2.

**Box 4** - Shows backup withholding or withholding you requested on unemployment compensation. Generally, a payer must backup withhold on certain payments at a 30% rate if you did not give your taxpayer identification number to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, for information on backup withholding. Include this on your income tax return as tax withheld.

**Box 6** - Shows the amount of taxable grants received by you from the Federal, state, or local government.

**If you have questions** about this tax statement, contact the RRB at 1-877-772-5772.



EXHIBIT<br>TAYLOR<br>8--7-19

**IMPORTANT TAX DOCUMENT**

**Vanguard**

Contact Info: 800-662-2739

RECIPIENT'S TIN: XXX-XX-8339

JOHNNY TAYLOR
14047 WESTCREEK DR
GONZALES LA 70737-7156

**2018 Form 1099-R**

Distributions From Pensions, Annuities, Retirement or
Profit-Sharing Plans, IRAs, Insurance Contracts, etc.

PAYER:
Vanguard Fiduciary Trust Company
P.O. Box 2600
Valley Forge, PA 19482 - 2600

PAYER'S TIN: 23-2640992

OMB No. 1545-0119

| Plan Name | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Fund Name | | | Account number | | | | | | | |
| Gross distribution (Box 1) | Taxable amount (Box 2a) | Taxable amount not determined (Box 2b) | Federal income tax withheld (Box 4) | Employee contributions/ Designated Roth contributions or insurance premiums (Box 5) | Distribution code(s) (Box 7) | IRA/ SEP/ SIMPLE | 1st year of desig. Roth contrib. (Box 11) | State tax withheld (Box 12) | State/Payer's state no. (Box 13) | State distribution (Box 14) |
| **ROLLOVER IRA** | | | | | | | | | | |
| WELLINGTON FUND INV | | | 88205222773 | | | | | | | |
| 11,448.97 | 11,448.97 | X | 1,144.90 | | 01 | X | | 0.00 | | |
| FEDERAL MONEY MKT FUND | | | 88205222773 | | | | | | | |
| 28,000.00 | 28,000.00 | X | 2,800.00 | | 01 | X | | 0.00 | | |
| INTERNATIONAL GROWTH INV | | | 88205222773 | | | | | | | |
| 26,462.64 | 26,462.64 | X | 2,646.26 | | 01 | X | | 90.00 | LA 1759751-001 | 26,462.64 |
| TARGET RETIREMENT 2035 | | | 88205222773 | | | | | | | |
| 39,713.66 | 39,713.66 | X | 3,971.37 | | 01 | X | | 0.00 | | |
| MID-CAP INDEX FUND ADM | | | 88205222773 | | | | | | | |
| 13,409.24 | 13,409.24 | X | 1,340.92 | | 01 | X | | 0.00 | | |



Copy 2 File this copy with your state, city, or local income tax return, when required.

Page 5 of 6

PLF01003

 **BUILDING AMERICA®**

October 5, 2017

**Johnny Taylor**
14047 West Creek Drive
Gonzales, LA 70737

Dear Johnny:

## – PERFORMANCE COMMENDATION –

On behalf of Union Pacific, we would like to convey our appreciation for your performance and contribution to the Avondale Team. Your example not only inspires others but epitomizes what UP Courage to Care is all about.

MOP,  Darrius Williams, has personally requested this commendation for your  collaboration on a successful CTC cut in at Avondale Yard.  Keep up the good work and continue in your efforts to gain knowledge in supporting safety and service. Your endeavors and commitment to safety do not go unnoticed.

Thank you for your diligence, dedication, professionalism and continued commitment to safety. We are grateful to have employees like you working for Union Pacific and the Livonia Service Unit.

Sincerely,

Cliff Bowman
Superintendent
Livonia Service Unit

Mr. Taylor.

Thank you is not enough I understand. Your leadership + dedication are a huge part of this service units success – Thank you sir

**PLF00715**

PLF00715



EXHIBIT
Taylor
8-7-10

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOHNNY TAYLOR** | * | **CIVIL ACTION NO. 18-cv-1110** |
| | * | |
| **VERSUS** | * | **JUDGE** _____ |
| | * | |
| **UNION PACIFIC RAILROAD** | * | **MAGISTRATE JUDGE** _____ |
| **COMPANY, INC.** | * | |

## COMPLAINT

    **NOW INTO COURT,** through undersigned counsel, comes the Plaintiff, Johnny Taylor, who respectfully represents as follows:

1.

    Mr. Taylor is a person of the full age of majority, a citizen of the United States and the State of Louisiana, who is domiciled in Ascension Parish, Louisiana.

2.

    Named Defendant herein is Union Pacific Railroad Company, a Delaware corporation, doing business in Louisiana, with its principal place of business in Omaha, Nebraska.

3.

    Mr. Taylor is seeking declaratory and injunctive relief, punitive damages, and compensatory damages.

4.

    The actions of the Defendant herein constitute violations of the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA").

### JURISDICTION AND VENUE ALLEGATIONS:

5.

    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

1



6.

Venue is appropriate in this judicial district under 28 U.S.C. § 1391 because the events giving rise to this action occurred in this judicial district.

## FACTUAL ALLEGATIONS:

7.

On January 1, 2017 the Federal Railroad Administration ("FRA") placed Union Pacific on an FRA Compliance Order for three (3) years due to Union Pacific's failure to obey FRA Track Standard Regulations. Specifically, the FRA had determined that Union Pacific was not recording all track defects, not properly repairing track defects, not issuing slow orders in accordance with FRA regulations, failing to take noncompliant tracks out of service, and not taking the necessary actions to prevent derailments.

8.

Mr. Taylor was employed by the Defendant, Union Pacific Railroad Company, Inc. ("Union Pacific") from September 12, 2007 until his termination on February 27, 2018. Mr. Taylor was hired into a program designed to advance staff into management positions. He was promoted to Assistant Manager of Track Maintenance in October 2008, and to Manager of Track Maintenance of the Livonia Service Unit in November 2012, which position he occupied until his termination. Mr. Taylor was responsible for railroad tracks throughout most of Louisiana, from Avondale, Louisiana to Livonia, Louisiana.

9.

Mr. Taylor's responsibilities in this position included maintaining and inspecting the tracks and ensuring strict compliance with standards set by the Federal Railroad Administration ("FRA").

2

Mr. Taylor was therefore considered security personnel for purposes of the FRSA, as the primary focus of his job was to ensure the safety of individuals and property transported by the railroad.

10.

During his tenure with Union Pacific, Mr. Taylor was a good and diligent employee and performed his work duties to the best of his abilities. He never had any disciplinary or performance related issues prior to 2018, and his performance reviews were consistently positive.

11.

On January 8, 2014, FRA Inspector Robert Faaborg inspected the tracks at the Union Pacific subdivision in Livonia, Louisiana. Mr. Faaborg found numerous defects, including areas under a "slow order"[1] of forty (40) miles per hour ("mph") but which could not support a train traveling over 10 mph, numerous defective track ties,[2] and areas that did not meet FRA standards. Mr. Faaborg instructed Mr. Taylor to write up defects for all of the tie clusters, which he did.

12.

On March 6, 2014, Mr. Taylor met with his supervisor, John Begley, and Raymond Davis, Union Pacific's Director of Track Maintenance, in Donaldsonville, Louisiana. Mr. Begley threatened to terminate Mr. Taylor's employment if he reported any additional safety issues regarding tie clusters in the tracks under his management. The same day, Mr. Taylor called Mr. Faaborg and informed him of Mr. Begley's threat.

13.

On November 20, 2015, Mr. Taylor met with several Union Pacific staff.  At this meeting, Mr. Taylor informed his superiors, including Jamal Chappelle, that he had made complaints to the

---

[1] A "slow order" prohibits trains crossing a portion of track from exceeding a certain speed due to safety reasons.
[2] "Track ties" are the wooden ties that support the railroad track. They must be replaced regularly to ensure safety and to prevent derailments.

3

FRA against John Begley due to his March 6, 2014 threat of termination in response to Mr. Taylor writing up defects.

14.

On December 9, 2015, a train derailment occurred on Track # 16 in Avondale, Louisiana. After the derailment, FRA Inspector Nicolas Roppolo inspected the track along with an FRA Deputy Regional Administrator, Mr. Taylor, Brad Usea, and Nicolas Issac. Mr. Taylor, Mr. Usea, and Mr. Issac, who were the only persons present who were qualified under 49 C.F.R. § 213.7 to inspect railroad tracks, all agreed that the derailment was caused by "butted knuckles" (a "human factor" derailment). However, Union Pacific falsely reported the derailment to the FRA as being caused by a "wide gauge" (a "track caused" derailment).

15.

On January 3, 2016, Mr. Roppolo contacted Mr. Taylor informed Mr. Roppolo of Union Pacific's false report and assured him that the report was made without Mr. Taylor's knowledge or consent.

16.

On January 12, 2016, Mr. Roppolo contacted Mr. Begley to inform him of the false report and direct that the inaccuracy be corrected. Mr. Roppolo noted that, during his inspection, nothing indicated that the gauges were wide. Mr. Roppolo asked whether persons not qualified under § 213.7 were inspecting railroad tracks and reporting incorrect causes, in light of the fact that the report was contrary to the conclusions of all of the qualified inspectors who had been present.

17.

During the first week of February 2016, Mr. Begley called Mr. Taylor and told him that he would "pay" for his November 20, 2015 comments regarding whistleblower complaints.

4

18.

Mr. Roppolo asked Mr. Taylor if Union Pacific employees received "push back" from their superiors after reporting unsafe track conditions. Mr. Taylor answered "yes."

19.

On October 4, 2016, Mr. Taylor was not feeling well when he reported to work. His blood pressure was elevated due to job-related stress. Mr. Taylor met with his supervisor, Mark Oldham (Director of Track Maintenance of Livonia, Louisiana Service Unit), and explained that he felt significant stress because of his belief that he was being denied promotions in retaliation for reporting unsafe conditions to the FRA. Mr. Oldham took Mr. Taylor home, stating that Mr. Taylor was either being terminated or being placed on unpaid administrative leave. Mr. Taylor was ultimately placed on *paid* administrative leave and returned to work three (3) weeks later. As justification for sending Mr. Taylor home and placing him on leave, Mr. Oldham later claimed that Mr. Taylor stated that he did not feel safe working on the tracks that day. Mr. Taylor denies ever having made that statement.

20.

On November 1, 2016, during a meeting on the "business car train" between Greg Workman, Chief Engineer of Union Pacific Railroad, Mark Wheeland, Chief Engineer of the Southern Region, and Mark Oldham. Mr. Workman asked Mr. Taylor if he was "in bed with the FRA." Mr. Taylor responded that if any individual associated with the FRA were to ask him a question, he would answer honestly.

21.

Mr. Taylor has received numerous threats of termination from Union Pacific employees for taking tracks out of service due to unsafe conditions. On one such occasion, on March 28, 2017,

a derailment occurred at the "Tail Track" in the Avondale, Louisiana yard. Approximately twenty (20) derailments had taken place at this location during Mr. Taylor's tenure with Union Pacific. In this case, Mr. Taylor removed the track from service after an incorrect design led to a derailment. Daniel Jacques, Director of Train Service, became belligerent with Mr. Taylor due to his taking the track out of service, followed him, and cursed at him as he was trying to exit the conversation. On March 28, 2017, Mr. Taylor reported this incident to the Union Pacific EEO.

22.

On May 28, 2017, Mr. Taylor investigated a derailment at Track 8 in Avondale, Louisiana along with Mark Oldham. Mr. Oldham concluded that the derailment was not caused by track conditions, and reported this to Mr. Taylor and those present. Nonetheless, on or about May 29 or May 30, 2017, while Mr. Taylor was away on vacation, Union Pacific falsely reported the derailment to the FRA as track-caused. Upon returning from vacation and discovering the false report, Mr. Taylor contacted Mr. Roppolo to inform him of same.

23.

On June 5, 2017, Mr. Taylor filed a complaint with Union Pacific EEO regarding Union Pacific's widespread falsification of railroad report documents submitted to the FRA.

24.

On November 2, 2017, after Mr. Taylor took the No. 1 Mainline Track out of service in Avondale, Louisiana, Kenneth Stuart threatened to take away Mr. Taylor's welding gang, expressly stating that this would be a consequence of his taking the track out of service. Mr. Taylor filed a complaint with Union Pacific's EEO Department on the same day.

25.

Between November 9 and November 21, 2017, three more derailments occurred at the Avondale track, this time at the "Switch 16" track. Mr. Stuart instructed Mr. Taylor to document the FRA alignment defects that led to the derailments and email the documentation to Mr. Stuart, at which point Mr. Stuart would forward the documentation to Mr. Wheeland. Mr. Taylor sent the documentation to Mr. Stuart, but Mr. Stuart did not forward the documentation to Mr. Wheeland.

26.

On December 20, 2017, Mr. Taylor participated in a conference call that included Wesley Dooley, a Union Pacific EEO employee. Mr. Dooley stated that, if Mr. Stuart had taken away Mr. Taylor's welding gang, as he threatened to do, this would have created a safety risk. However, Mr. Dooley opined that there was no whistleblower violation, since Mr. Taylor had not yet been terminated.

27.

On December 29, 2017, Mr. Taylor received a positive annual evaluation. Nothing in the evaluation suggested that Mr. Taylor had behaved inappropriately during the December 20, 2017 conference call. Nothing in the evaluation suggested that Mr. Taylor was a "quarrelsome employee." Mr. Taylor qualified for a performance bonus for 2017.

28.

Mr. Stuart falsely accused Mr. Taylor of failing to send him the derailment-related documentation in November of 2017. However, on January 9, 2018, Mr. Stuart informed Mr. Taylor and Nicolas Isaac that, although he received the documentation from Mr. Taylor, he did not forward it to Mr. Wheeland.

29.

On January 10, 2018, Mr. Taylor again took the Avondale "Switch 16" track out of service in response to the November 2017 derailments. Mr. Taylor called Mr. Stuart the same day to discuss the removal of the track from service. Mr. Stuart instructed Mr. Taylor to place the track back into service, which Mr. Taylor refused. Union Pacific later accused Mr. Taylor, incorrectly, of hanging up on Mr. Stuart.

<div align="center">30.</div>

On January 22, 2018, Mr. Taylor issued a slow order on a train track in White Castle, Louisiana. The same day, Mr. Taylor filed another complaint with Union Pacific EEO alleging harassment by Jacob Gilsdorf, Kenneth Stuart, Mark Wheeland, Phillip Hawkins, and Phil Kriefes. The same day, Mr. Taylor sent an email to the persons against whom he complained, informing them of his complaint. The email also stated that Mr. Taylor had informed Nicolas Roppolo about the unsafe track in Avondale, which was taken out of service on January 10. Mr. Gilsdorf proceeded to harass Mr. Taylor for slow ordering the track to 25 mph in White Castle, which Mr. Taylor had done pursuant to Union Pacific policy. Mr. Taylor reported this harassment to the FRA for investigation on January 24, 2018, pursuant to federal regulations.

<div align="center">31.</div>

On January 25, 2018, Mr. Taylor participated in a meeting with Jacob Gilsdorf, Kenneth Stuart, and Phillip Hawkins. During the meeting, Mr. Gilsdorf threatened to fire Mr. Taylor due to: (i) Mr. Taylor's allegedly "quarrelsome behavior" and other alleged bad conduct; (ii) Mr. Taylor's alleged failure to provide the necessary information to Mr. Stuart prior to taking the Avondale track out of service on January 10; and (iii) Mr. Taylor's alleged failure to provide enough information prior to his issuance of a slow order on January 22. Contrary to Mr. Gilsdorf's

<div align="center">8</div>

assertions, Mr. Taylor sent the necessary information by email on: (i) November 24, 2017; (ii) January 10, 2018; (iii) January 11, 2018; and (iv) January 22, 2018.

32.

On January 29, 2018, Mr. Stuart and Phillip Hawkins arrived at Mr. Taylor's house unannounced and informed Mr. Taylor that he was being placed on administrative leave. Mr. Stuart and Mr. Hawkins demanded Mr. Taylor's laptop, phone, and truck keys. The same day, Mr. Taylor filed still another complaint with Union Pacific EEO, alleging retaliation as a result of this incident.

33.

On January 31, 2018, Mr. Taylor met with Jacob Gilsdorf and Cliff Bowman at the Livonia Yard. Mr. Gilsdorf and Mr. Bowman asked Mr. Taylor to sign a document agreeing to a disciplinary plan due to: (i) Mr. Taylor's allegedly "quarrelsome behavior" and other alleged bad conduct; (ii) Mr. Taylor's alleged failure to provide the necessary information to Mr. Stuart prior to taking the Avondale track out of service on January 10; and (iii) Mr. Taylor's alleged failure to provide enough information prior to his issuance of a slow order on January 22. Prior to this, Mr. Taylor had never been accused of misconduct at Union Pacific.

34.

On February 1, 2018, Mr. Taylor received a letter from Scott McMillan, a Union Pacific EEO Investigator, informing him that an investigation had begun into Mr. Taylor's January 22, 2018 complaint.

35.

On February 8, 2018, Mr. Taylor received a letter from Mr. McMillan informing him that an investigation had begun into Mr. Taylor's January 29, 2018 complaint.

36.

On February 27, 2018, Mr. Taylor met Mr. Stuart and Mr. Wheeland at a Starbucks in Gonzales, Louisiana, at which Mr. Wheeland provided Mr. Taylor with a termination letter. The same day, Mr. Taylor filed an EEO report alleging that his termination was in retaliation for filing EEO complaints.

37.

On March 6, 2018, Mr. McMillan informed Mr. Taylor that he had not finished his investigation, meaning that Mr. Taylor was fired in the midst of an ongoing EEO investigation. Mr. McMillan also informed Mr. Taylor that he was unaware that Mr. Taylor had provided the required documentation to Mr. Stuart in connection with the Avondale derailments and the slow order. Mr. McMillan admitted that he had not conducted a thorough investigation.

38.

On March 23, 2018, Mr. Taylor received a letter from Mr. McMillan stating that Union Pacific's EEO investigation was complete and that no violations had been found.

39.

All of Mr. Taylor's administrative remedies have been exhausted, as more than two hundred ten (210) days have passed since the filing of his complaint to the Occupational Safety and Health Administration, United States Department of Labor ("OSHA") on May 30, 2018, which was received by OSHA on June 19, 2018.

## CAUSES OF ACTION

40.

Mr. Taylor engaged in activities protected by the FRSA by: (i) participating, cooperating, and assisting in investigations by the Federal Railroad Administration ("FRA") of unlawful activities and safety violations by Union Pacific; (ii) filing complaints with the Occupational

Safety and Health Administration ("OSHA") alleging violations of the FRSA; (iii) refusing to violate or assist in the violation of federal railroad safety regulations; (iv) reporting hazardous safety and security conditions in good faith; and (v) prohibiting and refusing to authorize the use of unsafe railroad tracks."

41.

Specifically, Mr. Taylor engaged in the following activities protected by 49 U.S.C. § 20109(b)(1)(C): (1) removing the Avondale "Tail Track" from service on March 28, 2017; (2) removing the Avondale "No. 1 Mainline" Track from service in November of 2017; (3) removing the Avondale "Switch 16" track from service on January 10, 2018; (4) refusing to put the Avondale "Switch 16" track back into service as directed by Kenneth Stuart and Jacob Gilsdorf; and (5) issuing a "slow order" on a train track in White Castle, Louisiana on January 22, 2018. All of these actions were necessary and were taken in good faith and with the honest belief that they needed to be taken promptly.

42.

Mr. Taylor engaged in activity protected by 49 U.S.C. § 20109(b)(1)(A) by reporting defective track ties at the Livonia substation to the FRA on January 8, 2014, at the direction of FRA inspector Robert Faaborg.

43.

Mr. Taylor engaged in the following activities protected by 49 U.S.C. §§ 20109(a)(1)(A) and 20109(a)(6): (1) submitting complaints to the FRA regarding John Begley's March 6, 2014 threat to terminate Mr. Taylor for writing up defects, which Mr. Taylor reasonably believed to be a violation of federal law; (2) informing FRA Inspector Nicolas Roppollo, on January 3, 2016, that Union Pacific had falsely reported the December 9, 2015 Avondale derailment as "track caused,"

when Mr. Taylor and Mr. Roppollo had determined the derailment to be a "human factor" derailment, a report which Mr. Taylor believed to be a violation of federal law; (3) informing Mr. Roppolo, between May 28 and June 5, 2017, that a derailment at Track 8 in Avondale, LA (which Taylor investigated on May 28, 2017) was falsely reported as "track-caused" by Union Pacific; (4) informing Mr. Roppolo, between January 10 and January 22, 2018, about the unsafe track in Avondale that he took out of service on January 10, 2018, which concerned multiple derailments and potential violations of federal laws and regulations; and (5) reporting to the FRA, on January 24, 2018, that Mr. Gilsdoorf confronted and harassed him for issuing a slow order on the White Castle track and briefly taking it out of service, which Mr. Taylor reasonably believed was a violation of federal laws and regulations.

44.

Mr. Taylor engaged in activities protected by 49 U.S.C. § 20109(a)(1)(C) by submitting numerous complaints to Union Pacific's EEO Department throughout his employment, with a good faith belief that the conduct complained of constituted violations of federal law that the EEO Department had the authority to investigate.

45.

At all times relevant hereto, Union Pacific was aware of each and every one of these protected activities.

46.

Union Pacific engaged in retaliatory conduct against Mr. Taylor in the following ways: (1) Union Pacific terminated Mr. Taylor's employment; (2) Union Pacific failed to promote Mr. Taylor on numerous occasions; (3) John Begley threatened to terminate Mr. Taylor for reporting defects on March 6, 2014; (4) Daniel Jacques became belligerent with Mr. Taylor on March 28,

12

2017 for taking the Avondale "Tail Track" out of service; (5) on November 2, 2017, Mr. Stuart threatened to take Mr. Taylor's welding gang away as a punishment for taking the Avondale No. 1 Mainline track out of service; (6) Mr. Gilsdorf harassed Mr. Taylor for issuing a slow order on the White Castle track; (7) Union Pacific placed Mr. Taylor on a PIP because of his refusal to put the unsafe Avondale Switch 16 track back into service; (8) Jacob Gilsdorf sent a letter to Mark Wheeland and Cynthia A. Kanabel, who had the authority to fire Mr. Taylor, and one of whom (Mark Wheeland) did in fact fire Mr. Taylor, complaining of Mr. Taylor's performance; and (9) On January 26, 2018, Ken Kuwamura sent a letter to Scott McMillan, Union Pacific's EEO investigator who is supposed to be neutral, during the pendency of an EEO investigation, which letter: (i) alleged that Mr. Taylor acted disrespectfully and dared Mr. Gilsdorf to fire him (both of which Mr. Taylor denies); (ii) complained about the fact that Mr. Taylor had hired an attorney; and (iii) Mr. McMillan that Mr. Taylor would be removed from service on January 29.

## JURY DEMAND

### 47.

The Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF:

**WHEREFORE**, the Plaintiff, Johnny Taylor, respectfully prays for judgment against the Defendant, Union Pacific Railroad Company, as follows:

1. For a declaratory judgment finding that the defendant, because of the actions described hereinabove, violated the Federal Railroad Safety Act, 49 U.S.C. § 20109;

2. That the Plaintiff be awarded all backpay, wages, salary, fringe benefits, interest, and other compensation lost as a result of Defendant's unlawful conduct, in an amount to be determined by the jury;

13

3. That the Plaintiff be awarded all compensatory damages sustained as a result of the Defendant's actions, including mental and emotional anguish, loss of enjoyment of life, litigation costs, expert witness fees, and reasonable attorney fees;

4. That the Plaintiff be awarded the maximum amount of punitive damages under 49 U.S.C. § 20109; and

5. That the Plaintiff be awarded any other and further relief as this Honorable Court deems just and appropriate.

RESPECTFULLY SUBMITTED:

SMITH LAW FIRM


_/s/ J. Arthur Smith, III____
J. ARTHUR SMITH, III, T.A.
La. Bar Roll No. 07730
ROBERT MOSELEY SCHMIDT
La. Bar Roll No. 37934
830 North Street
Baton Rouge, LA 70802
Telephone (225) 383-7716
Facsimile (225) 383-7773
*Attorneys for Plaintiff,*
*Johnny Taylor*

14

JS 44 (Rev. 08/18)

Case 3:18-cv-01110-SDD-EWD   Document 1-1   12/31/18   Page 1 of 1

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Johnny Taylor

**(b)** County of Residence of First Listed Plaintiff    Ascension Parish
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
J. Arthur Smith, III, Robert Moseley Schmidt
Smith Law Firm, 830 North St., Baton Rouge, LA 70802
(225) 383-7716

## DEFENDANTS

Union Pacific Railroad Company, Inc.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**      **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane         ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product          Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |     Liability       ☐ 367 Health Care/ |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &          Pharmaceutical |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
|     & Enforcement of Judgment |     Slander            Personal Injury |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'          Product Liability |  | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted |     Liability       ☐ 368 Asbestos Personal |  |      New Drug Application | ☐ 470 Racketeer Influenced and |
|     Student Loans | ☐ 340 Marine            Injury Product |  | ☐ 840 Trademark |      Corrupt Organizations |
|     (Excludes Veterans) | ☐ 345 Marine Product          Liability |  | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment |     Liability     **PERSONAL PROPERTY** | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
|     of Veteran's Benefits | ☐ 350 Motor Vehicle     ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) |      Protection Act |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle     ☐ 371 Truth in Lending |      Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract |     Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal          Property Damage |      Relations | ☐ 865 RSI (405(g)) |      Exchange |
| ☐ 196 Franchise |     Injury          ☐ 385 Property Damage | ☐ 740 Railway Labor Act |  | ☒ 890 Other Statutory Actions |
|  | ☐ 362 Personal Injury -          Product Liability | ☐ 751 Family and Medical |  | ☐ 891 Agricultural Acts |
|  |     Medical Malpractice |      Leave Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | ☐ 791 Employee Retirement |      or Defendant) |      Act |
| ☐ 220 Foreclosure | ☐ 441 Voting        ☐ 463 Alien Detainee |      Income Security Act | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment      ☐ 510 Motions to Vacate |  |      26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 240 Torts to Land | ☐ 443 Housing/            Sentence |  |  |      Act/Review or Appeal of |
| ☐ 245 Tort Product Liability |     Accommodations   ☐ 530 General |  |  |      Agency Decision |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - ☐ 535 Death Penalty |  **IMMIGRATION** |  | ☐ 950 Constitutionality of |
|  |     Employment      **Other:** | ☐ 462 Naturalization Application |  |      State Statutes |
|  | ☐ 446 Amer. w/Disabilities - ☐ 540 Mandamus & Other | ☐ 465 Other Immigration |  |  |
|  |     Other          ☐ 550 Civil Rights |      Actions |  |  |
|  | ☐ 448 Education      ☐ 555 Prison Condition |  |  |  |
|  |           ☐ 560 Civil Detainee |  |  |  |
|  |              Conditions of |  |  |  |
|  |              Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Federal Railroad Safety Act, 49 U.S.C. § 20109
Brief description of cause:
Whistleblower retaliation under the Federal Railroad Safety Act, 49 U.S.C. § 20109

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE

DOCKET NUMBER

DATE
12/31/2018

SIGNATURE OF ATTORNEY OF RECORD
/s/ Robert Moseley Schmidt

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT              APPLYING IFP              JUDGE              MAG JUDGE

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| Johnny Taylor | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| Union Pacific Railroad Company, Inc. | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

Civil Action No.  18-cv-1110-SDD-EWD

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Union Pacific Railroad Company, Inc.

through its Registered Agent

C T Corporation System
3867 Plaza Tower Dr.
Baton Rouge, Louisiana 70816

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    J. Arthur Smith, III
Robert Moseley Schmidt
Smith Law Firm
830 North St.
Baton Rouge, Louisiana 70802

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*